EL PUEBLO DE PUERTO RICO, apelante, *v.* MICHAEL MARTÍNEZ YANZANIS, apelado.

*Número:* AC-96-20 *Resuelto:* 8 de abril de 1997

*Edda Serrano Blasini, Subprocuradora General,* y *Eunice Amaro Garay, Procuradora General Auxiliar,* abogadas de la parte apelante; *César Echevarría González,* abogado de la parte apelada.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

A la luz del principio de legalidad, nos toca resolver qué debe prevalecer cuando una disposición clara de una ley penal está en aparente discrepancia con la exposición de motivos de esa ley, con su artículo de definiciones y con la intención legislativa original de dicha ley. Veamos.

I

Por muchos años la Ley de Sustancias Controladas de Puerto Rico, en su Art. 411A, 24 L.P.R.A. sec. 2411a, ha prohibido la distribución o venta de drogas en las escuelas

públicas o privadas, "o en sus alrededores", entendiéndose por esto último, toda el área a una distancia de 25 metros de los límites de la escuela.

■ En 1994 se presentó en la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico un proyecto de ley,[1] con la clara intención de enmendar la referida Ley de Sustancias Controladas de Puerto Rico y extender la prohibición del tráfico de drogas a todas las facilidades recreativas del país, independientemente de si pertenecían o no a una escuela.

El proyecto aludido, según fue aprobado originalmente en la Cámara de Representantes, expresaba lo siguiente:

> Toda persona que, a sabiendas e intencionalmente y en violación a las disposiciones de esta ley, introduzca, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale, entregue en cualquier forma, o simplemente posea cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de esta ley en una escuela pública o privada, *instalación recreativa, pública o privada*, o en sus alrededores, incurrirá en delito grave y, convicta que fuere, será sentenciada con el doble de las penas provistas por el Artículo 401(b) ó 404(a) de esta ley por un delito cometido por primera vez, que envuelva la misma sustancia y la misma clasificación. (Énfasis suplido.) P. de la C. 1603 de 17 de noviembre de 1994, pág. 3.

La clara intención original del legislador se plasmó, en parte, en la propia exposición de motivos de la ley sobre el particular que finalmente se aprobó en 1995. La ley en cuestión, la Ley Núm. 6 de 17 de enero de 1995 enmendó el referido Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, *supra*. Dice así su exposición de motivos, en lo pertinente:

> La responsabilidad ineludible del Estado de atacar el tráfico ilegal de drogas *no debe limitarse a las escuelas. Además de los plánteles escolares, es menester proteger todas aquellas áreas de*

---

[1] P. de la C. 1603 de 17 de noviembre de 1994. En el Senado se presento un proyecto análogo (P. del S. 941 de 16 de noviembre de 1994), el cual fue sobreseído por el citado P. de la C. 1603.

*diversión y recreación donde es concebible que el elemento cri-*
*minal induzca a nuestros niños y jóvenes a caer en la actividad*
*delictiva,* la adicción y la dependencia a drogas. Esta preocupa-
ción constituye fundamentalmente la justificación de la pre-
sente medida.

Dadas las circunstancias prevalecientes, en vista de la proli-
feración del problema del tráfico ilegal de drogas y el alza en la
criminalidad, y para proteger adecuadamente la salud, seguri-
dad y bienestar de nuestros niños, jóvenes, y de la familia en
general, esta Asamblea Legislativa declara las escuelas, *las fa-*
*cilidades recreativas* y las instituciones de tratamiento y reha-
bilitación como áreas de la más alta prioridad para el Gobierno
de Puerto Rico. (Énfasis suplido.) Exposición de Motivos de la
Ley Núm. 6, *supra,* 1995 Leyes de Puerto Rico 38.

La intención legislativa original se trasluce, además, de
la definición que se le dio en la propia Ley Núm. 6, *supra,*
al término "instalación recreativa", que se introdujo por
primera vez con su definición, por dicha ley, como en-
mienda al Art. 411A de la Ley de Sustancias Controladas
de Puerto Rico, *supra.* El nuevo término se define así en la
ley vigente:

Por "instalación recreativa", pública o privada se entenderá
todo parque, cancha, piscina, salón de máquinas de vídeo o
*pinball,* estadio, coliseo, área o lugar designado o comúnmente
utilizado para la celebración de actividades de juego, entreteni-
miento, diversión o recreación pasiva, competencias o eventos
deportivos, profesionales o de aficionados. Por "alrededores de
una instalación recreativa" se entenderá cubierta un área de
hasta cien (100) metros radiales a contarse desde los límites de
la instalación recreativa, según indicados estos límites por
cerca o cualquier otro signo de demarcación. (Énfasis en el
original.) 24 L.P.R.A. sec. 2411a.

No obstante lo anterior, durante la discusión en el he-
miciclo del Senado del proyecto de ley que sirvió de base a
la referida Ley Núm. 6, se presentó allí, *sin explicación*
*alguna,* una enmienda al texto del proyecto,[2] para inter-
calar la frase "que sea parte integral de las facilidades es-

---

[2] También se sometió enmienda similar respecto al título.

colares" después del término "instalación recreativa"([3]). XLV (Núm. 5) Diario de Sesiones de la Asamblea Legislativa (Senado), 14 de diciembre de 1994, pág. 16239. Esta enmienda, ofrecida escuetamente al final de las deliberaciones en el Senado, no era realmente cónsona con el propósito original para el cual se quería aprobar dicha Ley Núm. 6. Sorpresivamente, sin embargo, la enmienda fue aceptada, sin discusión, cuestionamiento u objeción alguna.([4]) Se creó así una confusión sobre cuál fue la intención definitiva de la Asamblea Legislativa cuando finalmente se aprobó la Ley Núm. 6, *supra.*

Así quedó legislada la parte pertinente de la nueva y vigente versión del Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, *supra*:

> Toda persona que, a sabiendas e intencionalmente y en violación a las disposiciones de este Capítulo introduzca, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale, entregue en cualquier forma, o simplemente posea cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de este Capítulo en una escuela pública o privada, *instalación recreativa, que sea parte integral*

---

([3]) Esto, a pesar de que en el Informe del Presidente de la Comisión de lo Jurídico del Senado sobre el P. de la C. 1603 se recomendó la aprobación del mencionado proyecto de ley, sin enmiendas.

([4]) El miércoles 14 de diciembre de 1994, en el hemiciclo del Senado, se desarrolló el siguiente diálogo:

"SR. VELEZ BARLUCEA: Señor Presidente, es para proponer una enmienda. En el Artículo 2, página 3, línea 12, después de "recreativa" que se le añada "que sea parte integral de las facilidades escolares,". Esa sería la enmienda en la página 3. A la página 4...

"SR. VICEPRESIDENTE: Si el compañero prefiere, podemos ir disponiendo de ellas de una en una. ¿Alguna objeción a esta enmienda? No habiendo objeción, los que estén a favor dirán que sí. En contra, no. Aprobada la enmienda. Próxima enmienda." XLV (Núm. 5) Diario de Sesiones de la Asamblea Legislativa (Senado), 14 de diciembre de 1994, pág. 16239.

Más adelante, se dijo:

"SR. VELEZ BARLUCEA: Eso es así, para unas enmiendas al título, señor Presidente.

"SR. VICEPRESIDENTE: Adelante.

"SR. VELEZ BARLUCEA: Después de "facilidades recreativas", debe decir "que sean parte integral de las facilidades escolares,".

"SR. RAMO[S] ORESTE: No hay ninguna objeción, señor Presidente.

"SR. VICEPRESIDENTE: No habiendo objeción, los que estén a favor dirán que sí. En contra, no. Aprobada. Próximo asunto." Diario de Sesiones, *supra*, pág. 1624.

*de las facilidades escolares*, pública y privada o en sus alrededores, incurrirá en delito grave y, convicta que fuere, será sentenciada con el doble de las penas provistas por las secs. 2401(b) ó 2404(a) de este título por un delito cometido por primera vez, que envuelva la misma sustancia y la misma clasificación. (Énfasis suplido.) 24 L.P.R.A. sec. 2411a.

## II

El 5 de mayo de 1995 se sometió acusación en contra de Michael Martínez Yanzanis, el aquí apelado, por violación al Artículo 411A de la Ley de Sustancias Controladas de Puerto Rico, *supra*. El 29 de agosto de dicho año, el Tribunal de Primera Instancia, Sala Superior de Ponce, declaró no ha lugar una moción de desestimación de dicha acusación presentada por la defensa al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

En la referida moción, la defensa del acusado había alegado que no se configuraba el delito imputado, pues la facilidad recreativa (donde según la acusación se había efectuado la actividad delictiva) no pertenecía a escuela alguna. Inconforme con la referida determinación de instancia, y bajo el mismo fundamento de la moción de desestimación que había presentado allí, el acusado acudió al Tribunal de Circuito de Apelaciones, el cual revocó el dictamen de instancia y ordenó la desestimación de la acusación.[5] El Procurador General acudió entonces ante nos.

Sostiene el Ministerio Público que la disposición en cuestión de la Ley de Sustancias Controladas de Puerto Rico no se debe interpretar de manera literal, sino dentro del contexto de lo que la Legislatura perseguía al aprobarla. Aduce que la inclusión de la frase "que sea parte integral de las facilidades escolares" (24 L.P.R.A. sec. 2411a) fue un error. Basándose en ello, plantea que este Tribunal debe corregir este equívoco por tratarse de un asunto de alto interés público. Insiste en que se debe inter-

---

[5] Esta sentencia fue emitida el 18 de enero de 1996.

pretar la disposición aludida, complementándola con la intención legislativa original. No le asiste la razón.

■ El Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031, el cual consagra el principio de legalidad, expresa que:

No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.

No se podrán crear por analogía delitos, penas, ni medidas de seguridad.

■ Conforme este principio, toda disposición de ley penal debe cumplir con el requisito de dar razonable notificación, a una persona de inteligencia ordinaria, sobre la conducta que prohíbe. El principio de legalidad le impone la responsabilidad al juzgador, antes de imponer una pena, de examinar minuciosamente la ley que la provee, para asegurarse que ésta aplica indudablemente a la conducta del imputado. Debe quedar claro que una persona común y corriente, que carezca de conocimientos legales, puede comprender razonablemente lo que se prohíbe.[6] No se satisface el fundamental principio de legalidad, si para conocer lo que está vedado es necesario un esfuerzo hermenéutico propio de juristas.

En el caso de epígrafe, se le imputó al apelado haber poseído una sustancia controlada en las inmediaciones de un parque de pelota. Según consta en autos, el parque no pertenecía a escuela alguna ni estaba localizado cerca de un plantel escolar. La ley cuya violación se le imputó sólo prohíbe la conducta referida cuando ésta ocurre en una escuela pública o privada, o en una "instalación recreativa, que sea parte integral de las facilidades escolares ...". Innegablemente, una persona común deduciría de la lectura

---

[6] *Pueblo v. Tribunal Superior*, 98 D.P.R. 750, 752 (1970); *Pueblo v. Santiago Vázquez*, 95 D.P.R. 593, 595 (1967); *Meléndez v. Tribl. Superior*, 90 D.P.R. 656, 659–660 (1964); *Pueblo v. Tribunal Superior*, 81 D.P.R. 763, 787 (1960); *Clínica Juliá v. Sec. de Hacienda*, 76 D.P.R. 509, 521 (1954); *Pueblo v. Mantilla*, 71 D.P.R. 36, 40 (1950).

de la disposición en cuestión que las áreas recreativas incluidas en ésta *son sólo las que sean parte integral de las facilidades escolares.* Contrario a lo que opina el Procurador General, no cabe interpretar el texto actual del referido Art. 411A de otra manera, pues la disposición en cuestión es palmaria en su redacción. Si bien es cierto, como aduce el Procurador General, que la particular cláusula penal en cuestión no corresponde cabalmente a los meritorios propósitos originales de la Ley Núm. 6, *supra*, más cierto aun es que el texto de esa cláusula es claro y sencillo, y no permite interpretación alguna que no sea la de su sentido literal. De ninguna manera nos encontramos ante una disposición que requiera interpretación para superar una vaguedad, una laguna o una redacción obscura o ambigua. No se trata de una disposición concreta que no dé aviso adecuado de lo que prohíbe.([7])

 La disposición penal que de modo claro sólo prohíbe la posesión de drogas en áreas recreativas de las facilidades escolares no es congruente con la intención original y la Exposición de Motivos de la Ley Núm. 6, *supra*; pero ello sólo se desprende de un análisis contextual de la ley y de su historial. No surge de la mera lectura de la parte pertinente del Art. 411A, *supra*, el cual de por sí es meridianamente claro. Los tribunales no tenemos la facultad de menospreciar la letra de una disposición de ley, cuando ésta es clara, bajo el pretexto de cumplir con su

---

([7]) En *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 214 (1990), expresamos:

"Los tribunales estamos autorizados a *interpretar* las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. Estamos impedidos, sin embargo, de obviar los mandatos claros y específicos de una ley cuando la misma es constitucionalmente válida." (Énfasis en el original.) Véanse, también: *Sist. Univ. Ana G. Méndez v. C.E.S. II*, 142 D.P.R. 563 (1997); *Cotto v. Depto. de Educación*, 138 D.P.R. 658 (1995); *Calderón v. Adm. Sistemas de Retiro*, 129 D.P.R. 1020 (1992); *El Vocero v. Junta de Planificación*, 121 D.P.R. 115, 121 (1988).

espíritu.([8]) Si existe una incongruencia, es a la Legislatura a quien compete corregirla. Ya hemos establecido que:

> El juez es un intérprete, y no un creador. Su facultad de interpretación adquiere relevancia cuando del estatuto surgen varios significados probables que suministren un margen adecuado para selección judicial, pero si el lenguaje es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa. *Clínica Juliá v. Sec. de Hacienda*, supra, pág. 521.

No se le puede exigir a una persona común, en este caso al acusado, que estudie la exposición de motivos y los proyectos de ley que anteceden a cada ley penal y que, además, especule sobre éstos con el propósito de auscultar si su conducta está tipificada o no como un delito. La ley penal tiene, necesariamente, que proveerle certeza. Ello lo exige el principio de legalidad. Como en el caso de autos, el acusado no podía inferir de la clara letra de la ley, bajo la cual se le acusó, que su conducta estaba penalmente prohibida, procedía la desestimación de la acusación, como lo ordenó el foro apelativo.

Por los fundamentos expuestos en esta opinión, *se dictará sentencia para confirmar el dictamen apelado.*

Los Jueces Asociados Señores Rebollo López y Hernández Denton concurrieron sin una opinión escrita.

---

([8]) *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873 (1996); *Ríos Colón v. F.S.E.*, 139 D.P.R. 167 (1995); *Pueblo v. Rexach Benítez*, 130 D.P.R. 273, 302 (1992); *Pueblo v. Tribunal Superior*, 101 D.P.R. 439 (1973).

Véase, también, *Pueblo v. Matías Báez*, 100 D.P.R. 859, 865 (1972), donde dijimos que "no podemos por implicación abarcar dentro de una disposición penal otros casos que no están comprendidos en ella".