CE-93-240                                                                                                          1

En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico | |
| --- | --- |
| Recurrido | Certiorari |
| V. | 99TSPR15 |
| Raymond Zayas Rodríguez | |
| Peticionario | |

Número del Caso: CE-93-0240

Abogados de la Parte Peticionaria: Lcdo. José Enrique Ayoroa Santaliz

Abogados de la Parte Recurrida: Hon. Pedro A. Delgado Hernández
Procurador General

Lcda. Eunice Amaro Garay
Procuradora General Auxiliar

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Ponce

Juez del Tribunal de Primera Instancia: Hon. Francisco Ortiz Rivera

Tribunal de Apelaciones, Sección Sur

Juez Ponente: Hon. López Vilanova

Panel Integrado Por: Presidente Juez Fiol Matta y los Jueces González Román y López Vilanova

Fecha: 2/17/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Recurrido

       v.                                    CE-93-240

Raymond Zayas Rodríguez

    Peticionario

Opinión del Tribunal emitida por la Juez Asociada señora Naveira de Rodón

San Juan, Puerto Rico, a 17 de febrero de 1999

> **El *sentido de injusticia* que inquieta a veces la conciencia en su busca de la verdad, y que como fuente espontánea de la formación del derecho contribuye con su corriente a la integración activa del acervo jurídico, marca una diferencia fundamental en la actitud práctica de los tribunales al convertirse en criterio adecuado para llegar a un verdadero *sentido de justicia* en las controversias judiciales.... Las leyes se hacen por los hombres y se interpretan para los hombres. Por eso, en su interpretación, debe ser factor preeminente la realidad humana de la vida, no la abstracción dogmática de reglas eternas e inmutables.... En esta época de justicia social debemos marchar hacia la humanización de la justicia y el derecho, dejando atrás en su decadencia rigorista el sentido dogmático del derecho y la justicia.** (Énfasis nuestro y citas omitidas.) Figueroa v. Díaz, 75 D.P.R. 163, 175 (1953).

I

El 28 de agosto de 1992, el entonces Tribunal Superior, Sala de Ponce, dictó una sentencia mediante la cual le impuso al peticionario Raymond Zayas Rodríguez diez (10) años de reclusión por el delito de homicidio,[1] y cinco (5) y tres (3) años de reclusión, respectivamente, por infracción a los Arts. 8 (portación sin licencia de armas cargadas o sus municiones a la vez) y 6 (posesión de revólver o arma de fuego sin licencia) de la Ley de Armas de Puerto Rico.[2] El tribunal dispuso que las penas fueran cumplidas de manera concurrente y bajo el régimen de sentencia suspendida.

El Ministerio Público consignó su oposición a la suspensión de la sentencia impuesta por la infracción al Art. 8 de la Ley de Armas de Puerto Rico. Adujo que, a tenor con el Art. 2 de la Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 de 3 de abril de 1946, según enmendada por la Ley Núm. 8 de 30 de noviembre de 1989, 34 L.P.R.A. sec. 1027 (en adelante, Ley de Sentencia Suspendida), las personas que resultaban convictas bajo el Art. 8 de la Ley de Armas de Puerto Rico, estaban excluidas del privilegio de la sentencia suspendida.

En atención a lo anterior, el tribunal de instancia emitió una resolución mediante la cual resolvió que la Ley Núm. 8 de 30 de noviembre de 1989, que a su vez enmendó la Ley de Sentencia Suspendida, supra, no excluyó de los beneficios de la libertad a prueba a las personas convictas por violación al Art. 8 de la Ley de Armas de Puerto Rico. Según el tribunal, excluir a estas personas de los beneficios de la ley es actuar en contra de la intención legislativa consignada en la Exposición de Motivos de la misma. Señaló también que la inclusión de dicho Art. 8, supra, fue un acto "no contemplado en el propósito de la ley".

---

[1] Art. 85 del Código Penal, según enmendado, 33 L.P.R.A. sec. 4004.

[2] Ley Núm. 17 de 19 de enero de 1951, supra, 25 L.P.R.A. secs. 418 y 416.

El Ministerio Público acudió al entonces Tribunal de Apelaciones, Sección Sur. Mediante sentencia de 12 de mayo de 1992, dicho foro revocó la resolución recurrida y concluyó lo siguiente:

> [C]ualquier duda sobre la intención legislativa de excluir o no los convictos por el artículo 8 [sic] de la Ley de Armas [de Puerto Rico] queda totalmente disipada al examinar conjuntamente ambos informes. El sexto párrafo del informe de la Comisión de lo Jurídico del Senado–idéntico al tercer párrafo de la exposición de motivos de la Ley, antes transcrito– no es un error de la Legislatura ni se refiere a la portación de ametralladoras [,] escopetas o rifles, sino que se refiere específicamente a la posesión o venta de artefactos que reducen el ruido del disparo de un arma de fuego, artículo 10 de la Ley de Armas y a la portación de armas de fuego cargadas o sus municiones, artículo 8 de la Ley. No se trata pues de un error non sequitur o de una inadvertencia. La exposición de motivos contiene específicamente la descripción de los artículos de la Ley de Armas que el legislador entendió necesario excluir del beneficio de la sentencia suspendida. La exclusión del artículo 8 no fue un acto "no contemplado" sino por el contrario[,] respondió a la intención del legislador. Intención que no solo pretendía establecer un castigo más severo a los infractores al artículo 5 de la Ley de Armas, sino así hacerlo respecto a los artículos 6A, 8 y 10 de la referida Ley.

Inconforme, el peticionario Zayas Rodríguez acudió ante nos y alegó el siguiente error:

> El Honorable Tribunal de Apelaciones cometió error de Derecho al determinar que fue clara y explícita la intención del legislador el excluir específicamente el Art. 8 de la Ley de Armas [de Puerto Rico] de los beneficios de una sentencia suspendida.

II

La Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 del 3 de abril de 1946, según enmendada, 34 L.P.R.A. sec. 1026 et seq. (en adelante Ley de Sentencia Suspendida), estableció en nuestra jurisdicción un sistema mediante el cual se le confiere a un convicto la oportunidad de cumplir su sentencia o parte de ésta fuera de las instituciones carcelarias, siempre y cuando éste observe buena conducta y cumpla con todas las restricciones que el tribunal le imponga. Véanse, Pueblo v. Molina Virola, Op. de 22 de octubre de 1996, 141 D.P.R.___(1996), 96 JTS 133, pág. 201 Pueblo v. Pacheco Torres, 128 D.P.R. 586, 589 (1991); Vázquez v. Caraballo, 114 D.P.R. 272, 275

(1983). El disfrute de una sentencia suspendida es un privilegio y no un derecho. Pueblo v. Molina Virola, supra. La concesión de tal privilegio a un convicto que cualifica prima facie descansa en la sana discreción del tribunal. Pueblo v. Ortega Santiago, 125 D.P.R. 203, 210 (1990).

La legislación tiene el propósito de hacer viable la política pública de rehabilitación enunciada en la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, a los efectos de "'propender, dentro de los recursos disponibles, al tratamiento adecuado de los clientes para hacer posible su rehabilitación moral y social'". Pueblo v. Vega Vélez, 125 D.P.R. 188, 200 (1990).

Así pues, el objetivo del estatuto es precisamente mitigar, conforme a las circunstancias particulares del convicto, las consecuencias de la imposición de una pena. En este aspecto, evita los efectos negativos en el individuo que la reclusión produce, reduce el impacto de la reclusión sobre dependientes y familiares. También promueve el interés social en la prevención y corrección del crimen, minimiza los costos sociales y económicos de la reclusión. Además, propende a que el convicto se convierta en un miembro útil de la sociedad. Vázquez v. Caraballo, supra. El logro de ese objetivo depende en gran medida de la facultad del tribunal sentenciador de poder individualizar cada caso, imponiendo las condiciones pertinentes y necesarias que en su opinión la situación particular ante su consideración requiera. Pueblo v. Vega Vélez, supra, a la pág. 201.

Es dentro de este marco conceptual que examinaremos la controversia que hoy nos ocupa. En particular debemos auscultar, a la luz de su historial legislativo, cuál es el fin último de la Ley Núm. 8, supra, que enmendó la Ley de Sentencia Suspendida. Comenzaremos nuestro análisis examinando los principios de hermenéutica legal.

III

Sabido es que los tribunales, a fin de resolver las controversias ante su consideración y adjudicar los derechos de las partes, deben interpretar las leyes aplicables a la situación de hechos que tienen ante sí, de forma tal que se cumpla cabalmente con la intención legislativa. R. E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., Publicaciones JTS, 1987, Vol. 1, pág. 241.

El legislador, en su misión de aprobar leyes que fomenten el bienestar del país,

> [t]rata de corregir un mal, alterar una situación existente, completar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno. Bernier y Cuevas Segarra, supra, págs. 245-246.

Reiteradamente hemos resuelto que las leyes hay que interpretarlas y aplicarlas en comunión con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver. Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 756 (1992). Véase, además, Pueblo v. Pizarro Solís, 129 D.P.R. 911, 918 (1992).

El proceso de interpretar las leyes, la hermenéutica jurídica, consiste en auscultar, averiguar, precisar, determinar, cuál ha sido la voluntad legislativa, o sea, qué es lo que ha querido decir el legislador. Bernier y Cuevas Segarra, supra, pág. 241. "Las reglas de hermenéutica legal no son arbitrarias o caprichosas. Todas descansan en sanos principios de lógica". Central Boca Chica, Inc. v. Tesorero de P.R., 54 D.P.R. 424, 432 (1939). Desde temprano en este siglo expresamos que, en cuanto a la interpretación de las leyes, sólo existe una regla absolutamente invariable: debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo. Lange v. El Pueblo, 24 D.P.R. 854, 858 (1917).

El Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, dispone que, cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu. Sin embargo, todas las leyes, aún las **"clarísimas"**, requieren

interpretación. (Énfasis nuestro.) <u>Vélez</u> v. <u>Srio. de Justicia</u>, 115 D.P.R. 533, 544 (1984); <u>Pueblo</u> v. <u>Tribunal Superior</u>, 81 D.P.R. 763,788 (1960). Cuando exista alguna ambigüedad, este Tribunal rechazará una interpretación literal y forzada de un texto legal que conduzca a un resultado que no puede haber sido el que se intentó por el legislador.[3] Véase, <u>Pueblo</u> v. <u>Seda</u>, 82 D.P.R. 719, 725 (1961).

En <u>Passalacqua</u> v. <u>Mun. de San Juan</u>, 116 D.P.R. 618 (1985), resolvimos, por unanimidad, que cierto artículo de ley debía leerse con la inclusión de una frase que por error o inadvertencia fue omitida en la versión final aprobada por la legislatura. Sobre este particular, expresamos lo siguiente:

> Reiteradamente hemos decidido que '<u>[n]uestra jurisprudencia rechaza la interpretación literalista de la ley</u>' especialmente si a plena vista se ve que se ha cometido un error. <u>Rivera Cabrera</u> v. <u>Registrador</u>, 113 D.P.R. 661, 664-665 (1982). En <u>Roig Commercial Bank</u> v. <u>Buscaglia, Tes.</u>, 74 D.P.R. 986, 998 (1953), este Tribunal determinó que si una palabra, frase o disposición ha sido aprobada por inadvertencia o error, especialmente si es contraria al resto de la ley o limitaría la efectividad de ésta, se puede eliminar. Entendemos que bajo las mismas circunstancias se puede añadir una frase o palabras, para que pueda cumplir con la intención legislativa. [Énfasis suplido y citas omitidas.] <u>Passalacqua</u> v. <u>Mun. de San Juan</u>, supra, pág. 623.

En el proceso de indagar la intención del legislador es necesario examinar el historial legislativo. Si la ley tiene un exposición de motivos, generalmente ésta recoge el propósito que inspiró su creación. En los casos en que la ley carece de una exposición de motivos o, cuando aún teniéndola, no contiene la intención legislativa, es útil consultar otros documentos tales como los informes de las comisiones que estudiaron el proyecto de ley y los debates celebrados cuando la

---

[3] [L]a ley no es letra muerta sino que tiene un contenido espiritual y por tanto la interpretación no puede ser únicamente literal, ni únicamente lógica, sino ambas a la vez. Bernier y Cuevas Segarra, supra, pág. 263.

En <u>Clínica Juliá</u> v. <u>Sec. de Hacienda</u>, 76 D.P.R. 509, 520 (1954), manifestamos que "la literalidad puede ser ignorada por los tribunales solamente cuando ella es claramente contraria a la verdadera intención o propósito legislativo, según tal propósito o intención puede surgir

medida fue discutida en el hemiciclo según aparecen en el Diario de Sesiones. "Son también pertinentes y es propio utilizarlos en la búsqueda de la intención legislativa, los anteproyectos y los informes alrededor de los mismos que son preparados fuera de la Asamblea Legislativa, cuando ésta los tiene ante sí y adopta sustancialmente esos anteproyectos". (Énfasis suplido.) Bernier y Cuevas Segarra, supra, pág. 243.

Es pues, a la luz de estos principios de hermenéutica, que interpretaremos el Art. 2 de la Ley de Sentencia Suspendida, supra.

IV

Como resultado de un análisis mecánico y una interpretación literal, el entonces Tribunal de Apelaciones resolvió que tanto la exposición de motivos de la ley que nos ocupa como su texto reflejan claramente el propósito legislativo de excluir expresamente de los beneficios de la sentencia suspendida a los infractores del Art. 8 de la Ley de Armas de Puerto Rico. No podemos refrendar esta interpretación ni este resultado. **La letra de la ley no debe ser seguida ciegamente en casos que no caen dentro de su espíritu y fin.** (Énfasis suplido.) Cardona v. Comisión Industrial, 57 D.P.R. 397, 399 (1940). Comencemos, pues, nuestro análisis.

En su escrito el peticionario sostiene que la inclusión del Art. 8 de la Ley de Armas de Puerto Rico en la enumeración de los artículos excluidos del beneficio de la sentencia suspendida constituye un *non sequitur* y, por ende, un error. Aduce que la intención del legislador al redactar la Ley Núm. 8 de 30 de noviembre de 1989, supra, fue castigar con mayor severidad a quienes almacenan armas largas, particularmente ametralladoras, escopetas, carabinas y rifles, con el propósito de facilitarlas y ponerlas a disposición de otros delincuentes para con ellas cometer sus crímenes y fechorías. De ahí concluye que la legislatura no tuvo la intención de excluir del

---

de la totalidad del estatuto, o de la totalidad de la sección envuelta."

privilegio de una suspensión de sentencia los casos aislados de ciudadanos convictos por infracción al Art. 8 de la Ley de Armas. Le asiste la razón.

El texto del Art. 2, en lo pertinente, establece lo siguiente:

> El Tribunal Superior podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, infracción a las secs. 415 y 416a del Título 25 en su modalidad de delito grave, y secs. 418 y 420 del Título 25 [Arts. 5, 6A en su modalidad grave, 8 y 10] conocidas como la "Ley de Armas de Puerto Rico"....[4]

La Exposición de Motivos de la Ley Núm. 8, reza:

> El Artículo 5 de la Ley de Armas de Puerto Rico, prohibe la posesión o uso sin autorización de aquellas armas de fuego capaces de causar grave daño corporal a sus víctimas como son la ametralladora, carabina, escopeta de cañón cortado y rifle, entre otras. La ley reconoce esa situación al calificar de delito grave su posesión y uso sin autorización legal y al ordenar que se le imponga al infractor una pena de reclusión acorde con la gravedad del delito cometido.
>
> Debe imponerse un castigo más severo a toda persona que, de acuerdo a una modalidad delictiva de reciente origen, almacena armas de fuego ilegalmente con el propósito de facilitarlas y ponerlas a disposición de otros delincuentes para que éstos cometan sus crímenes y fechorías con la ayuda de estas armas. Esta práctica ilícita se está generalizando como un patrón de conducta entre los individuos que han hecho del crimen su modo de vida ya que les posibilita obtener y deshacerse fácilmente de la posesión del arma de fuego que los conecta con la comisión del delito. Mediante acuerdos concertados con cualquier persona que, aunque resulte un coautor, no participa activamente en la comisión de estos delitos, logran dificultar el esclarecimiento de los crímenes y el procesamiento de los responsables.

---

[4] El Art. 5 de la Ley de Armas de Puerto Rico, supra, según enmendado, 25 L.P.R.A. sec. 415, se refiere a la posesión o uso ilegal de ametralladora, carabina, rifle o escopeta de cañón cortado, así como cualquier modificación de éstas, o cualquier arma de fuego que pueda ser disparada automáticamente y que pueda causar gran daño corporal. El Art. 6A, supra, según enmendado, 25 L.P.R.A. sec. 416a, en su modalidad grave, castiga a toda persona que ilegalmente tenga, posea, guarde, almacene, alquile o mantenga bajo su custodia o control dos o más armas de fuego, o que ilegalmente facilite un arma de fuego a otra persona, especialmente si el arma se usa en la comisión de un delito. El Art. 6A, supra, también contiene una modalidad menos grave para aquellos poseedores de armas de fuego con licencia expirada o cancelada **que hayan solicitado su renovación dentro del término provisto por ley**. El Art. 8, supra, 25 L.P.R.A. sec. 418, se refiere a la portación sin licencia de pistola, revólver o cualquier arma de fuego cargada, o que porte algún arma al mismo tiempo que porta sus municiones. Finalmente, el Art. 10, supra, 25 L.P.R.A. sec. 420, castiga la posesión o venta de silenciadores para cualquier arma de fuego.

Mediante esta enmienda se excluye de los beneficios de sentencia suspendida a los convictos por los delitos antes descritos, así como a aquellos que violen las disposiciones de la Ley de Armas que prohiben el empleo de cualquier instrumento o accesorio que silencie o reduzca el ruido del disparo de cualquier arma de fuego y la portación de armas de fuego cargadas.

De entrada, salta a la vista que la enmienda al Art. 2 de la Ley de Sentencia Suspendida se aprobó para intentar contrarrestar el alza en los delitos cometidos mediante la utilización de armas de **alta capacidad destructiva** con el potencial de atentar en gran escala contra la seguridad de la ciudadanía, tales como <u>ametralladoras, carabinas, escopetas de cañón cortado y rifles, entre otras</u>. También se aprobó para evitar el almacenamiento ilegal de armas de fuego, **particularmente las antes mencionadas**, con el fin de **facilitar** actividades de crimen organizado. Esta fue la realidad social que motivó la aprobación del estatuto en cuestión.

Así pues, de la Exposición de Motivos, de forma clara y directa, surge que la motivación o intención del legislador al aprobar la enmienda fue imponer "un castigo más severo a toda persona que, ... almacena armas de fuego ilegalmente [en particular, ametralladoras carabinas, escopetas de cañón cortado y rifles] con el propósito de facilitarlas y ponerlas a disposición de otros delincuentes para que éstos cometan sus crímenes y fechorías ...." Es por ello que excluye **tajantemente** del privilegio de la sentencia suspendida al Art. 5, el cual se refiere específicamente a la posesión de ametralladoras, carabinas, rifles o escopetas de cañón cortado. Al igual que también excluye el uso de silenciadores de armas de fuego (Art. 10) y la posesión ilegal de dos o más armas de fuego (Art. 6A), ambas exclusiones acordes con su propósito de combatir el crimen organizado.

Como hemos podido apreciar, el legislador, al enumerar los delitos excluidos de los beneficios de la sentencia suspendida, incluyó los Arts. 5 y 6A en su modalidad de delito grave, y el 10 de la Ley de Armas de Puerto Rico. Estos delitos están claramente enmarcados dentro

del mal social que el legislador intentaba atacar. Ahora bien, por equivocación, según explicaremos más adelante, también incluyó el Art. 8 de la Ley de Armas de Puerto Rico, delito claramente distinguible de los anteriores.[5]

El Art. 8 de la Ley de Armas de Puerto Rico, al cual concierne la controversia en el caso de autos, reglamenta en forma general y tipifica la conducta de cualquier ciudadano que porte, conduzca o transporte cualquier arma cargada sin tener una licencia.[6] Es pues, ineludible concluir que la conducta así descrita en la propia Ley de Armas de Puerto Rico, está marcadamente distante de los propósitos expresados por la Asamblea Legislativa al aprobar la Ley Núm. 8 de 30 de noviembre de 1989; que eran y son, valga la repetición: **atacar un problema de una nueva modalidad delictiva mediante la imposición de un castigo más severo a quienes almacenan o portan armas o ambas, con mayor capacidad destructiva, como son las ametralladoras, escopetas, carabinas y rifles, para facilitarlas y ponerlas a disposición de otros delincuentes para con ellas cometer sus crímenes y fechorías. El legislador tomó en consideración que ésta es una práctica generalizada que en nuestra isla se ha establecido como patrón de conducta entre**

---

[5] Es propio señalar que el texto del Art. 2 de la Ley de Sentencia Suspendida, supra, que aparece citado en el Título 34 de Leyes de Puerto Rico Anotadas (L.P.R.A.), de 1991 se codificó al Art. 6A de la Ley de Armas de Puerto Rico (25 L.P.R.A. sec.416A), como el Art. 6 (25 L.P.R.A. sec. 416). (Véase, nota de codificación insertada en el Historial de la Ley Núm. 8 de 30 de noviembre de 1989, 34 L.P.R.A. sec. 1027, Suplemento Especial de Advertencia al Suplemento Acumulativo de 1991). Los codificadores cometieron el error de adjudicar perfecta identidad entre el Art. 6A y el Art. 6 debido a que éste último era el único que existía en 1989. Sin embargo, el error fue corregido en el Suplemento Acumulativo del Título 34 de Leyes de Puerto Rico Anotadas (L.P.R.A.) para el 1994, donde el Art. 6A quedó codificado según la ley fue aprobada. Sobre éste particular, véase lo discutido en Pueblo v. Molina Virola, supra.

[6] Dicho artículo dispone lo siguiente:

> Toda persona que porte, conduzca o transporte cualquier pistola, revólver o cualquier otra arma de fuego cargada, o que porte, conduzca o transporte cualquier pistola, revólver, o cualquier otra arma de fuego y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver u otra arma de fuego,

**individuos que han hecho del crimen su *modus vivendi*; de manera que a estos delincuentes se les posibilita obtener y deshacerse fácilmente de la posesión de esas armas de fuego que los conectan con la comisión del delito.**

Lo antes dicho se ratifica en el Informe de 22 de junio de 1989 de la Comisión de lo Jurídico del Senado, el cual, sobre el particular, dispone lo siguiente:

> Las armas cuya posesión o uso sin autorización de ley se prohibe en el Art. 5 de la Ley de Armas de Puerto Rico [ametralladora, carabina, rifle, escopeta de cañón cortado] son aquellas capaces de causar grave daño corporal a sus víctimas y su uso debe ser desalentado por el peligro potencial que las mismas tienen para la ciudadanía.[7]

> Para desalentar el uso de tan peligrosas armas [ametralladora, carabina, rifle, escopeta de cañón cortado] es necesario tomar medidas adicionales a las ya legisladas. Por tal razón proponemos que aquellas personas que sean encontradas culpables de violar ese precepto no sean merecedoras de disfrutar del privilegio de sentencia suspendida.

> Debe tenerse presente, que el disfrute de una sentencia suspendida es un privilegio y no un derecho. El interés en la protección de la comunidad y en consideración a la gravedad de la conducta, el legislador ha sancionado con mayor severidad cierto tipo de delito excluyéndolo del beneficio de sentencia suspendida. (Énfasis suplido.) Informe de la Comisión de lo Jurídico del Senado, págs. 2 y 3.

El Informe de la Comisión de lo Jurídico Penal de la Cámara de Representantes con respecto a P. del S. 468 contiene prácticamente idénticos señalamientos.

No existe, pues, lugar a dudas de que la Exposición de Motivos de la Ley Núm. 8 revela la genuina preocupación del legislador por el aumento en el uso de ametralladoras, escopetas, carabinas y rifles y no por la posesión de la pistola o revólver, estén cargados o no. Resulta, entonces, comprensible que se **excluya** del beneficio de

---

sin tener una licencia para portar armas expedida según más adelante se dispone, será culpable de delito grave.

[7] No cabe duda que la referencia a "grave daño corporal" se hace con relación a la alta capacidad destructiva de estas armas. Después de todo, prácticamente cualquier objeto mal utilizado puede causar grave daño corporal.

sentencia suspendida a los convictos de posesión ilegal de ametralladoras, carabinas, rifles y escopetas de cañón cortado y no así a aquellos convictos por la portación sin licencia de una pistola o revólver.[8]

Ciertamente, éste no es el caso del aquí convicto y peticionario. De acuerdo a la prueba aquilatada por el foro de instancia, se trata de un caso aislado de quien, en el fragor de una pelea, recibe una puñalada en el vientre y en forma súbita dispara contra su victimario, agresión fatal. La prueba también demostró que el agresor era una persona de reputación y carácter intachables.

El contundente y claro historial de la legislación en controversia, apoya incondicionalmente nuestra posición de que la misma no se promovió con el propósito de incluir el Art. 8 de la Ley de Armas de Puerto Rico.

Cabe señalar además que interpretar la ley como lo hizo el Tribunal de Apelaciones, podría tener desastrosas consecuencias para ciudadanos comunes no previstas por el legislador. Por ejemplo, aquellos que no son delincuentes, pero que por olvido o error involuntario, se les expiró el plazo para renovar su licencia de portación de armas cargadas, podrían ser convictos, sin derecho a sentencia suspendida. Estos ciudadanos simplemente por haber incurrido en una conducta negligente quedarían excluidos del beneficio, mientras que otros que comenten delitos más graves, disfrutarían de este

---

[8] La ametralladora, escopeta de cañón recortado, carabina y el rifle, no son el tipo de arma para la cual el ciudadano común y corriente solicita licencia para portar arma. Tampoco constituyen la clase de armas para las cuales se otorgan estas licencias. Véase, por ejemplo, el Art. VI del Reglamento para la Concesión de Licencias para Portar Armas de Fuego bajo la Facultad del Superintendente de la Policía de Puerto Rico de 1 de diciembre de 1988, el cual, para fines de conceder licencias para portar, define arma de fuego como un revólver o una pistola. Es menester destacar que, aunque este Reglamento fue creado con el propósito de disponer lo pertinente respecto a los requisitos necesarios para la concesión de licencias para portar armas de fuego a unos ciudadanos particulares tales como jueces, fiscales, embajadores, entre otros, la definición antes expuesta también aplica a ciudadanos comunes.

privilegio.  Ciertamente, ésta no fue la intención del legislador al enumerar las exclusiones de los beneficios de la sentencia suspendida.

V

Finalmente, y únicamente para propósitos de argumentación y comparación, sin hacer uso de la analogía y sin que se entienda que estamos interpretando la aplicación o no de la Ley de Sentencia Suspendida al Art. 8A, de la Ley de Armas de Puerto Rico -ya que no tenemos ante nuestra consideración la interpretación y aplicación de dicho estatuto- es que analizaremos comparativamente los Arts. 8 y 8A.[9]

Es propio destacar que de la consideración y análisis de la Ley Núm. 8, supra, aflora una interrogante adicional.  Elaborada la pieza legislativa con los motivos ya descritos, **¿cómo entonces se explica el que también se omitiera en la parte dispositiva el excluir de los beneficios de la sentencia suspendida otras disposiciones de la Ley de Armas de Puerto Rico tan afines y en consonancia con dichos objetivos ya expuestos?**  Nos referimos específicamente a la exclusión del Art. 8A de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418A, que prohibe la portación ilegal de ametralladoras, escopetas de cañón cortado, rifles, carabinas y cualquier modificación de estas armas.

Es obvio que lo anterior fue el resultado de una lamentable confusión plasmada en el anteproyecto de administración que fue enviado por el Gobernador a la Asamblea Legislativa.  En dicho anteproyecto,

---

[9] Cabe señalar que, en aquellos casos de naturaleza criminal, el principio de legalidad prohibe terminantemente imponer penas o medidas de seguridad que la ley, anticipadamente, no hubiera establecido. Tampoco se puede crear por analogías delitos, penas, ni medidas de seguridad.  Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031.  Véase, además, Nevares-Muñiz, D., Código Penal de Puerto Rico, ed. 1997, pág. 15.  El principio de legalidad impide que, en ausencia de ley que así lo determine, los tribunales nos demos a la tarea de interpretar analógicamente los estatutos penales.  Pueblo v. Sierra Rodríguez, Op. de 8 de febrero de 1995, 137 D.P.R. ___ (1995), 95 JTS 11.  Además, en materia de interpretación de estatutos penales hemos resuelto que aun aquellos casos en que existe incongruencia entre el texto de la ley y la intención legislativa, es a la Asamblea Legislativa a quien compete corregir dicha situación.  Pueblo v. Martínez Yanzanis, Op. de 8 de abril de 1997, 142 D.P.R. ___ (1997), 97 JTS 43.

por un aparente error, se dejó fuera la letra "A" para designar el artículo que prohibe la portación o transporte de cualquier pistola o revólver cargado o que transporte dicha arma junto con las municiones. La letra "A" se incluyó en su lugar en el artículo que prohibe la portación ilegal de ametralladoras. Así pues, es este último el que aparenta haber quedado excluido del privilegio de la sentencia suspendida. Tal como ocurre con muchos proyectos enviados al inicio de un cuatrienio cuyo contenido recoge promesas de campaña del partido que obtuvo el mandato para gobernar, el texto del anteproyecto original enviado por la Fortaleza fue repetido mecánicamente en todos los documentos de la Cámara y el Senado, perpetuando así el error de omitir la letra "A" del Art. 8. El P. del S. 468 fue aprobado por ambos cuerpos sin enmiendas, excepto por cambios de estilo menores. Más aún, sin éste debatirse fue aprobado casi por unanimidad en la Cámara de Representantes (40-1) y, con sólo dos votos en contra, en el Senado.

No obstante, aunque inadvertidamente se haya omitido la letra "A" y literalmente se mencione en la ley el Art. 8 en lugar del Art. 8A, el historial legislativo es muy claro y explícito en cuanto a la intención legislativa de desalentar la utilización de **armas de alta capacidad destructiva** que fomentan y facilitan la empresa criminal tales como la ametralladora, la escopeta recortada, la carabina y el rifle, **no así el acto aislado de la transportación de una pistola o revólver cargado.** No cabe duda que el legislador siempre ha considerado que la portación ilegal de ametralladoras o carabinas es mucho más grave que la portación ilegal de una pistola. De ahí que éste haya establecido la pena de reclusión por un término fijo de veinte (20) años para la infracción al Art. 8A, Portación ilegal de ametralladora, mientras que la pena que conlleva la infracción al Art. 8, Portación ilegal de pistola, es de sólo cinco (5) años.[10]

---

[10] La dificultad para percatarse del error del anteproyecto enviado desde la Fortaleza y aprobado por la Legislatura consiste en que, en lugar de palabras, se utilizaron números para identificar los artículos

En nuestro ordenamiento jurídico hemos reconocido que una interpretación literal de una ley penal que trae consecuencias absurdas debe ser evitada siempre que se pueda dar a ésta una interpretación razonable, de acuerdo con el propósito legislativo. Pueblo v. Mantilla, 71 D.P.R. 36, 44 (1950). Véase, además, Pueblo v. Arandes De Celis, 120 D.P.R. 530, 547 (1988). Cónsono con lo anterior, también hemos expresado, que, aunque los estatutos penales deben ser interpretados restrictivamente, una interpretación restrictiva no puede ser contraria a una evidente intención legislativa. Pueblo v. Mantilla, supra.

"El profundo respeto que nos merece la intención del legislador nos obliga en determinadas ocasiones a suplir las inadvertencias en que éste pueda haber incurrido". Hull Dobbs Co. v. Tribunal Superior, 82 D.P.R. 77, 84 (1961). Para evitar un resultado absurdo o irrazonable, en el pasado no hemos vacilado en aclarar el texto de una ley conforme a la intención legislativa. Pacheco v. Vargas, Alcaide, 120 D.P.R. 404, 409 (1988); Díaz Marín v. Mun. de San Juan, 117 D.P.R. 334 342 (1986); Torres v. Castillo Alicea, 111 D.P.R. 792 801 (1981).

> Es regla dorada de hermenéutica judicial, que las disposiciones de una ley deben ser examinadas e interpretadas de modo que no conduzcan a resultados absurdos, sino a unos armoniosos. PARDAVCO, Inc. v. Srio. de Hacienda, 104 D.P.R. 65, 71 (1975).

Lo antes expuesto ratifica nuestra conclusión de que no fue el propósito del legislador excluir del beneficio de la sentencia suspendida a los infractores del Art. 8, portación ilegal de pistola o revólver. Interpretar la ley de otra manera sería desvirtuar su claro propósito.

---

de la Ley de Armas que serían excluidos del beneficio de la libertad a prueba. En este caso, el número acompañado de una letra sirve para comunicar en clave cuál es el artículo al que se quiere hacer referencia. Al no existir un solo artículo que penalice la portación ilegal de armas de fuego sino dos, el 8 y el 8A, debió incluirse la letra "A" para identificar que era la portación ilegal de ametralladora la conducta que se quería desalentar.

Como ya expresáramos, en materia de hermenéutica legal sólo hay una regla que es "absolutamente invariable" y ésta es la de que debe describirse y hacerse cumplir la verdadera intención y deseo del poder legislativo. En otras palabras, la regla de oro en materia de interpretación de leyes es que el objeto principal de todas las reglas de hermenéutica no es conseguir un objetivo arbitrario preconcebido sino dar efecto al propósito del legislador. De igual modo, debemos tomar en cuenta el principio de hermenéutica de estatutos penales que postula la interpretación restrictiva en cuanto a lo que desfavorezca al acusado y liberalmente en cuanto a lo que le favorezca. Pueblo v. Sierra Rodríguez, Op. de 8 de febrero de 1995; 137 D.P.R.____ (1995); 95 JTS 11, pág. 609.

En esa misma línea y en situaciones semejantes a la controversia del caso de autos, precisamente donde estaba envuelta la interpretación y aplicación de disposiciones tanto de la Ley de Sentencia Suspendida como de la Ley de Armas de Puerto Rico, este Tribunal pasó por alto el lenguaje específico del estatuto y puso en vigor el evidente y claro propósito e intención del legislador. Véase, Pueblo v. Avilés, 54 D.P.R. 272 (1939), y Pueblo v. Emmanuelli, 67 D.P.R. 667 (1947). Igual validez tienen en la esfera criminal nuestras expresiones en Figueroa v. Díaz, supra, pág. 176 en el sentido de que, para lograr el propósito para el cual el estatuto fue concebido es menester tener presente que "`[l]o que está en el espíritu de un estatuto, está en el estatuto, aunque no esté en su letra; y lo que está en su letra no está en el estatuto a menos que esté en su intención.'"

La legislación ante nuestra consideración sobre sentencia suspendida es una esencialmente reparadora. Esta arroja beneficios tanto para los acusados de delitos como para la comunidad que recibe protección a través de la rehabilitación de quienes en una circunstancia en particular han delinquido. No existe base, ni en su letra ni en su espíritu, para interpretaciones restrictivas inmeritorias.

VI

Queda, pues, meridianamente claro, que el propósito de la Ley Núm. 8 fue y es imponer un castigo más severo a quienes almacenan armas de **alta capacidad destructiva** tales como ametralladoras, escopetas, carabinas y rifles, para facilitarlas y ponerlas a disposición de otros delincuentes, para con ellas cometer sus crímenes y fechorías. Tanto en el Informe del Senado como en el Informe de la Cámara de Representantes se aclara que fueron dos los criterios que utilizó el legislador para sancionar con mayor severidad cierto tipo de delito mediante la exclusión del privilegio de la sentencia suspendida: primero, el interés en la protección de la comunidad; y segundo, la gravedad de la conducta. Sobre la base de estos dos criterios se mantuvo el beneficio de la sentencia suspendida para los convictos por la posesión ilegal de armas de menor alcance, como pistola o revólver (Art. 6 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 416), que cualifiquen.[11]

Dentro del contexto del recurso ante nos, al peticionario Zayas Rodríguez convicto por el Art. 8 de la Ley de Armas de Puerto Rico, se le ha negado el beneficio de la sentencia suspendida por entender el Tribunal de Apelaciones que la ley lo excluye de sus beneficios. No podemos estar de acuerdo. Los argumentos de derecho antes reseñados demuestran con meridiana claridad que no fue la intención del legislador excluirlo de los beneficios de la sentencia suspendida.

No se requiere mayor fatiga ni esfuerzo mental para ver transparentemente que, mediante la enmienda al Art. 2 de la Ley de Sentencia Suspendida, supra, el legislador, lo que ha hecho es, atacar el problema de la empresa criminal colectiva, enfocando el problema del almacenaje de armas largas de **alta capacidad destructiva**, sumamente

---

[11] Como señaláramos en la nota al calce Núm. 7, prácticamente todo objeto mal utilizado puede causar grave daño corporal. Lo que diferencia a las ametralladoras, carabinas, rifles, escopetas de las pistolas y revólveres es que, por ser las primeras de mayor alcance y potencia y por tener un mecanismo más elaborado que les permite

peligrosas que en forma concertada llevan a cabo delincuentes habituales. No podemos desvirtuar este propósito excluyendo de los beneficios de una suspensión de sentencia a ciudadanos que en casos aislados y en una situación particular pudieran resultar convictos por infracción al Art. 8 de la Ley de Armas de Puerto Rico, lo que pudiera constituir una clara injusticia.

> Los estatutos penales deben interpretarse a la luz de la realidad social de donde surgen y operan. **Nuestro deber es interpretar las leyes en el contorno de una situación social y económica actual para resolver controversias humanas de profundas implicaciones personales para los afectados y para la comunidad en general....** Nunca debemos olvidar que 'el sentido de hoy no es siempre el sentido de mañana'...[y que l]a interpretación judicial tiene por su naturaleza una evolución natural para las distintas épocas ... `[nosotros los jueces] no [podemos estar] ajeno[s] a las transformaciones sociales, científicas y jurídicas. *La ley vive y se desarrolla en ambientes que cambian y evolucionan, y si no queremos estarla reformando de un modo frecuente, preciso es que la adapte[mos], como su propia voluntad permite, a las nuevas necesidades de la época.'...* `***[Las leyes hay que interpretarlas] a la luz de las realidades específicas de la sociedad en que operan'***. (Énfasis nuestro.) <u>Pueblo</u> v. <u>Arandes De Celis</u>, supra, págs. 538-39.

---

disparar **más municiones en menos tiempo y con mayor precisión,** son más peligrosas y destructivas que las segundas.

VII

En virtud de todo lo antes expuesto, revocamos la determinación del Tribunal de Apelaciones y en su lugar confirmamos la decisión del foro de instancia.


                                        Miriam Naveira de Rodón
                                             Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Recurrido


       v.                              CE-93-240

Raymond Zayas Rodríguez

    Peticionario


SENTENCIA


San Juan, Puerto Rico, 17 de febrero de 1999

Por los fundamentos antes expresados, se expide el auto solicitado y se dicta sentencia revocando la dictada contra el peticionario Raymond Zayas Rodríguez por el anterior Tribunal de Apelaciones, Sección Sur. Se confirma la sentencia del entonces Tribunal Superior, Sala de Ponce.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García disiente con opinión escrita a la cual se unen los Jueces Asociados señores Rebollo López y Corrada del Río.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Demandante-apelado

                                CE-93-240        Certiorari

                                                            v.

Raymond Zayas Rodríguez

    Acusado-peticionario

Opinión Disidente del Juez Asociado señor Negrón García a la cual se unen los Jueces Asociados señores Rebollo López y Corrada del Río

San Juan, Puerto Rico, a 17 de febrero de 1999

I

Como jurista, "[e]l Derecho no es una mera glosa o exégesis de textos legales. Va más lejos, tratando de aprehender y captar los fenómenos jurídicos, descubriendo su carga de humanidad, su significación e influencia en la vida social. **La ley aparece como versión puntual y ocasional del Derecho, permanentemente alerta a las exigencias sociales.** El Derecho se configura como elemento constitutivo de la sociedad participando como un ser vivo de sus conquistas y de sus decadencias. Con razón advierte Carbonnieri en su excelente monografía Derecho Flexible, **que el Derecho de nuestro país pasa a**

**través de nuestras arterias, de nuestros músculos, de nuestro cerebro."** (Citas omitidas).[12]

Dos fundamentos jurídicos nos impiden refrendar la Opinión mayoritaria. <u>Primero</u>, no es menester examinar la anomalía que señala el peticionario Zayas Rodríguez[13] de que se excluye del beneficio de Sentencia Suspendida el Art. 8[14] de la Ley de Armas, no el Art. 8a[15], a base de que, a

---

[12] Francisco Soto Nieto, <u>Compromiso Humano y Ético del Abogado</u>, Rev. La Ley, Madrid, 4 (1995), pág. 992.

[13] Acusado de asesinato en primer grado e infracción a los Arts. 6 y 8 de la Ley de Armas, el entonces Tribunal Superior, Sala de Ponce (Hon. Francisco Ortiz Rivera), lo declaró culpable de homicidio e infracción a los referidos Arts. 6 y 8 de la Ley de Armas. Lo sentenció a diez (10) años de reclusión por el homicidio, cinco (5) por el Art. 8, y tres (3) años por Art. 6, respectivamente. Le impuso que las penas fueran cumplidas en forma concurrente, **bajo el régimen de sentencia suspendida.**

El Ministerio Público cuestionó la suspensión de la sentencia. El ilustrado tribunal reiteró su criterio. Consignó que la conducta sancionada por el Art. 8 no corresponde al propósito expresado por la Asamblea Legislativa en la Exposición de Motivos de la Ley Núm. 8, de 30 de noviembre de 1989, que enmendó la Ley de Sentencias Suspendidas, Núm. 259 de 3 de abril de 1946 (34 L.P.R.A. sec. 1027), para incluir en sus exclusiones varios artículos de la Ley de Armas.

El Ministerio Público presentó <u>certiorari</u> en el Tribunal de Apelaciones (Hons. Fiol Matta, González Román y López Vilanova). El reputado foro **revocó** al entender que los delitos por los cuales fue convicto estaban excluidos del privilegio. Inconforme, Zayas Rodríguez acudió ante nos mediante <u>certiorari</u>.

[14] "Toda persona que porte, conduzca o transporte cualquier pistola, revólver o **cualquier otra arma de fuego cargada**, o que porte, conduzca o transporte cualquier pistola, revólver, o **cualquier otra arma de fuego** y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver u **otra arma de fuego**, sin tener una licencia

su juicio, es un delito más severo. **En recta metodología adjudicativa, no es necesario examinar la cuestión; Zayas Rodríguez fue convicto bajo el Art. 8 de la Ley de Armas, no el Art. 8a. Segundo, en nada afecta el que se haya excluido expresamente el Art. 8.**

En los méritos, carece de razón argumentar que la Asamblea Legislativa no excluyó de tales beneficios los convictos del Art. 8. Elaboremos.

## II

Sabido que la Ley de Sentencias Suspendidas es un mecanismo alterno para que un convicto cumpla su sentencia fuera de prisión. Se trata de un privilegio, no un derecho. Pueblo v. Texidor Seda, 128 D.P.R. 578 (1991), Pueblo v. Martínez Rivera, 99 D.P.R. 568 (1971); Pueblo v. Álvarez Maurás, 100 D.P.R. 620 (1972). Dicha ley faculta discrecionalmente al tribunal sentenciador para suspender las sentencias, excepto **los delitos expresamente excluidos.**

**Una lectura del texto de la ley aplicable revela de forma clara, que está excluido el Art. 8 de la Ley de Armas (sec. 418).**

Reza:

> "El Tribunal Superior podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave **que no fuere** asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, infracción a las secs. 415 y 416a del Título 25 en su modalidad de delito grave, y **secs. 418** y 420 del propio título..."

Aún así, la mayoría avala la tesis de Zayas Rodríguez, y sostiene que **la intención legislativa** de la Ley Núm. 8 de 30 de noviembre de

---

para portar armas expedida según más adelante se dispone, será culpable de delito grave." (25 L.P.R.A. sec. 418).

[15] "Toda persona que porte, conduzca o transporte, sin autorización de ley, una ametralladora, escopeta, escopeta de cañón cortado, rifle, carabina o cualquier modificación de **estas armas** será sancionada con pena de reclusión por un término fijo de veinte (20) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinticinco (25) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de quince (15) años." (25 L.P.R.A. sec. 418ª).

1989, enmendatoria de la Ley de Sentencias Suspendidas, fue sólo atacar el problema de la empresa criminal colectiva sobre almacenaje de armas largas sumamente peligrosas en forma concertada por delincuentes habituales. De ahí deduce que la Asamblea Legislativa no tuvo el propósito de excluir el privilegio de una suspensión de sentencia en casos aislados de ciudadanos convictos por infracción al Art. 8 de la Ley de Armas. **Se trata de una interpretación que mata la letra y espíritu de la ley.**

Ciertamente, uno de los propósitos de la aludida enmienda del 1989 fue afrontar la empresa criminal colectiva sobre almacenaje de armas largas por delincuentes habituales. **Sin embargo, es un absurdo pensar que la Asamblea Legislativa estuviera ajena a la alta incidencia criminal individual en la portación y uso ilegal de armas de fuego. Un tribunal no debe descartar la existencia de otros propósitos legislativos al aprobar una ley o enmienda.** Interpretar que sólo respondió al limitado propósito propuesto por el peticionario Zayas Rodríguez, conllevaría ignorar la letra clara plasmada en la Ley de Sentencias Suspendidas. El legislador fue muy claro en su exclusión como parte de una amplia política pública integral. La Exposición de Motivos de la Ley Núm. 8, reza:

> "Mediante esta enmienda **se excluye** de los beneficios de sentencia suspendida a los convictos por los delitos antes descritos así como a aquellos que violen las disposiciones de la Ley de Armas que prohiben el empleo de cualquier instrumento o accesorio que silencie o reduzca el ruido del disparo de cualquier arma de fuego y la **portación de armas de fuego cargadas.**"

No podemos pues, convenir con el argumento mayoritario de que la exclusión del Art. 8 del privilegio de sentencia suspendida, no se ajusta a la intención de la Asamblea Legislativa; **significa alterar lo que muy claramente el legislador aprobó como ley.** A fin de cuentas,

"[e]l texto claro de la ley es la expresión por excelencia de la intención legislativa". Pueblo v. Martínez Yanzanis, res. en 8 de abril de 1997; Pueblo v. Villafañe Fabián, res. en 10 de octubre de 1995; Pueblo v. Sierra Rodríguez, res. en 8 de febrero de 1995; Ojeda Ojeda v. El Vocero, res. en 26 de octubre de 1994; Ferretería Matos, Inc. v. P.R. Tel. Co., 110 D.P.R. 153, 157 (1980), citando a Rodríguez Rodríguez v. Gobernador, 91 D.P.R. 101, 107 (1964).

Disentimos. Confirmaríamos la Sentencia del reputado Tribunal de Circuito de Apelaciones.


ANTONIO S. NEGRÓN GARCÍA

Juez Asociado