Opinión disidente emitida por el
Juez Asociado Señor Estrella Martínez.
La controversia de epígrafe requería que este Tribunal reconociera la naturaleza y adecuada aplicación del princi *732 pío de especialidad, consagrado en nuestro ordenamiento penal. Particularmente, teníamos ocasión para determinar los efectos que su infracción acarrea.
Ante ello, una Mayoría de este Tribunal, aferrándose a una interpretación incorrecta del Art. 2 de la Ley Núm. 15-2011 (4 LPRA see. 1632), se embarcó en una aplicación errónea del principio de especialidad que contrasta con la copiosa doctrina jurídica sobre esta materia. Esa aplicación desatinada del aludido principio conduce a una Mayoría de este Tribunal a concluir inexplicablemente que pro-cede enmendar el pliego para acusar por un delito por el cual el Ministerio Público admitió que no tiene prueba.
Por entender que en el caso de autos correspondía aplicar el mandato diáfano del principio de especialidad y, por consiguiente, desestimar la acusación del peticionario, no me queda más que disentir del curso de acción seguido por una Mayoría de este Tribunal.
Trabada así la controversia, procedo a desglosar el trasfondo fáctico y procesal que la suscitó.
I
Como consecuencia de unos alegados hechos acaecidos el 24 de abril de 2013, contra el Sr. Randiel Cordero Meléndez (señor Cordero Meléndez o peticionario) se presentó una denuncia por violación al Art. 277 del Código Penal de 2012 (33 LPRA sec. 537O).(1) En específico, surge de la denuncia *733 que el Ministerio Público atribuyó al señor Cordero Meléndez la posesión de un equipo de telecomunicación (celular con chip y batería) no autorizado por el Departamento de Corrección y Rehabilitación, que permite el acceso a la red celular de comunicaciones. Véase Apéndice, págs. 1-2.
Celebrado el procedimiento de vista preliminar, el foro judicial determinó “no causa” por el delito imputado. Inconforme, el Ministerio Público solicitó la celebración de una vista preliminar en alzada. Durante ésta, tanto la Sociedad para Asistencia Legal, representación legal del peticionario, como el Ministerio Público se expresaron en torno a la infracción del principio de especialidad. En cuanto al particular, el Ministerio Público argumentó lo siguiente:
[S]e preguntará el tribunal porque [sic] razón el Ministerio Público sabiendo que hay una ley especial e [sic] no ha radicado, verdad, y no radicó conforme al principio de especialidad por el Art. 2 de la Ley 15. Pues eso tiene una razón de ser honorable, la prueba desfilada en este caso y la postulada por el Ministerio Público es que no tenemos constancia, verdad, de que ese aditamento o artefacto, verdad, pueda hacer una transmisión de comunicación y que se [sic] estaba hábil para el día de los hechos. A pesar de que eh ... verdad de las gestiones que se hicieron y de que en efecto, por lo menos prendía el celular no tenemos evidencia de que ese celular pueda ser capaz de transmitir un [sic] onda de comunicación que pueda utilizar precisamente para los fines de comunicación. (Enfasis suplido). Apéndice, pág. 87.
Concluido el desfile de prueba, se encontró causa para acusar por el Art. 277 de nuestro precepto penal general. Así las cosas, el 26 de septiembre de 2013, se presentó contra el señor Cordero Meléndez la acusación siguiente:
[...] ilegal, voluntaria, maliciosa, criminalmente, siendo confinado de una institución penal del Estado Libre Asociado de Puerto Rico, tenía en su posesión equipo de telecomunicación no autorizado por el Departamento de Corrección, que permite el acceso a la red celular de comunicaciones, consistente en un *734 teléfono celular color negro, de la compañía ATT, con chip y batería. (Énfasis suplido). Apéndice, pág. 11.
Luego de varios trámites procesales, el peticionario presentó una Moción de Desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 LPRAAp. II. En esencia, argüyó que el Ministerio Público contravino el principio de especialidad al presentar cargos por transgresión a una ley general, en lugar de aplicar las disposiciones de la ley especial provistas en el Art. 2 de la Ley Núm. 15-2011 (Ley Núm. 15), 4 LPRA see. 1632, que regulaban con mayor especificidad la conducta atribuida.(2) Asimismo, alegó que hubo ausencia total de prueba sobre los elementos esenciales del delito bajo la ley especial aplicable a los hechos.
Para el señor Cordero Meléndez, el Ministerio Público no puede pasar por alto el aludido principio “simplemente porque sea más fácil probar los elementos del delito contemplados en la ley general o por no contar con prueba para probar los elementos del delito bajo la ley especial”. Apéndice, pág. 22. En consecuencia, solicitó la desestimación de la acusación. Por su parte, el Ministerio Público se allanó a la determinación que en su día hiciera el foro judicial con respecto a la solicitud de desestimación presentada. Ello, toda vez que nunca expresó su postura, a pesar de haber sido ordenado por el tribunal.
El 26 de marzo de 2014, el Tribunal de Primera Instancia emitió una resolución mediante la cual declaró “no ha lugar” la moción de desestimación instada por el señor Cordero Meléndez. En síntesis, concluyó que el peticionario no *735 lo colocó en posición para determinar que en la vista preliminar en alzada no desfiló prueba con relación a los elementos del delito imputado. De igual forma, el foro primario razonó que el juzgador que presidió la mencionada vista en alzada estimó probada la consumación de los elementos del delito proscrito en el Art. 277 del Código Penal, por lo que su dictamen no debía alterarse.
En desacuerdo, el señor Cordero Meléndez recurrió ante el Tribunal de Apelaciones mediante petición de certiorari y moción en auxilio de jurisdicción. El 16 de abril de 2014, el foro apelativo intermedio emitió una resolución en la cual denegó la expedición del recurso y, por consiguiente, declaró “no ha lugar” la moción de paralización presentada. En un escueto dictamen, determinó que el recurso instado era frívolo. A su vez, razonó que “[e]l tipo de delito imputado al amparo del Art. 277 del Código Penal, 33 L.P.R.A., see. 5370 (la mera posesión de un celular en una institución correccional) es radicalmente distinto al de la Ley 15-2011 (el uso de celulares para cometer fraudes u otros delitos desde una institución correccional)”. Apéndice, pág. 93.
Inconforme con tal determinación, el señor Cordero Meléndez presentó ante este Tribunal un recurso de certiorari, en conjunto con una moción en auxilio de jurisdicción, y señaló la comisión del siguiente error:
Erró el Honorable Tribunal de Apelaciones al denegar la expedición del recurso presentado, confirmando de esa forma la determinación del TPI, toda vez que en el caso ante su consideración procedía la desestimación de la acusación toda vez que era de aplicación el Art. 2 de la Ley 15 de 18 de febrero de 2011 y no el Art. 277 del Código Penal, violentado de esa forma, el principio de especialidad. Petición de certiorari, pág. 8.
Esencialmente, el peticionario reproduce los argumentos esgrimidos ante los foros recurridos con relación a la alegada violación al principio de especialidad. Por lo tanto, nos solicita que revoquemos la determinación del Tribunal de Apelaciones y, a su vez, ordenemos la deses *736 timación de la acusación a base de la aplicación del principio de especialidad.
En atención a lo anterior, el 2 de mayo de 2014, emitimos una resolución mediante la cual le concedimos 20 días a la parte recurrida para que mostrara causa por la cual no debíamos revocar el dictamen del foro apelativo intermedio. En su Escrito en Cumplimiento de Orden, el Ministerio Público, representado por la Oficina del Procurador General, alega que el caso ante nuestra consideración no cumple con los requisitos que activan el principio de especialidad. A esos efectos, arguye que entre el Art. 277 del Código Penal y el Art. 2 de la Ley Núm. 15 existe una duplicidad de disposiciones legales; una idéntica tipificación de la conducta antijurídica, en la que se está penalizando la misma conducta de posesión de celulares o medios de comunicación por un confinado en una institución penal, con los mismos elementos del tipo, sin que una disposición sea más especial o exija más que la otra. Para la Oficina del Procurador General, quien comete el delito especial (Art. 2 de la Ley Núm. 15) también consuma el delito general (Art. 277 del Código Penal) y a la inversa: quien perpetra el delito general, también incurre en el delito especial.
De igual forma, la Oficina del Procurador General ex-pone que el principio de especialidad está fundado en la premisa de que el delito especial tiene una pena mayor que el delito general. Por lo tanto, aduce que en este caso no cabe aplicar tal principio, ya que la pena por el delito especial es más benigna que la pena para el delito general. En vista de ello, la Oficina del Procurador General argumenta que procede la acusación por el delito general imputado, pues es el que establece la pena más grave. Entiende que ello es cónsono con el principio de alternatividad.
Cumplida nuestra orden y con el beneficio de la comparecencia de las partes involucradas, procedo a exponer el criterio que me lleva a disentir del dictamen emitido por una Mayoría de este Tribunal.
*737 II
Como es sabido, en nuestro ordenamiento jurídico rige la norma de que si una misma materia está prevista como delito tanto por una ley general como por una ley especial, se aplicará la ley especial. Pueblo v. Hernández Villanueva, 179 DPR 872, 891-892 (2010); Pueblo v. Ramos Rivas, 171 DPR 826, 836-837 (2007); Pueblo v. Pérez Casillas, 117 DPR 380, 398-399 (1986); Pueblo v. Mena Peraza, 113 DPR 275, 280 (1982). Recientemente, el legislador reafirmó esta normativa al enmendar mediante la Ley Núm. 246-2014 el Art. 9 del Código Penal de 2012 (33 LPRA see. 5009), y dejar establecido que “[c]uando la misma materia se regula por diversas disposiciones penales: [...] [l]a disposición especial prevalece sobre la general”. Este mandato diáfano se enmarca dentro de lo que se conoce como el principio de especialidad.
En virtud de tal principio, se pueden resolver los conflictos del concurso de leyes, ya que constituye uno de los criterios para solucionar la existencia del concurso aparente entre varias leyes o disposiciones legales.(3) Pueblo v. Hernández Villanueva, supra, págs. 891-892, citando a L. Jiménez de Asúa, Tratado de Derecho Penal, 2da ed., Buenos Aires, Ed. Losada, 1958, T. II, pág. 540; E.L. Chiesa Aponte, Derecho penal sustantivo, 81 (Núm. 2) Rev. Jur. UPR 343, 347 (2012) (Derecho penal sustantivo I). Conforme al referido principio, ante la disyuntiva de aplicar una ley general y una ley especial, que aluden a la misma temática, se torna forzosa la aplicación de la última. Esto, *738 a menos que exista una determinación legislativa que establezca lo contrario.
En repetidas ocasiones este Tribunal ha sostenido que el principio de especialidad es:
[E]n rigor, una regla de interpretación estatutaria que toma en cuenta la relación de jerarquía en que se hallan las distintas normas que concurren en su aplicación a un hecho delictivo. En estos casos se aplica la ley especial, según la máxima lex specilais derogat legi genereali, pues se parte del supuesto de que la finalidad de una regulación especial es ex-cluir o desplazar la general. Y es que así tiene que ser, pues quien realiza el tipo específico siempre consuma el genérico, mientras que a la inversa no sucede lo contrario. (Citas omitidas). Pueblo v. Hernández Villanueva, supra, pág. 892, citando a Pueblo v. Ramos Rivas, supra, págs. 836-837.
El reconocido tratadista Santiago Mir Puig señala que de acuerdo al “principio de especialidad, existe concurso de leyes cuando de los varios preceptos aparentemente concurrentes uno de ellos contempla más específicamente el hecho que los demás, y tal concurso de leyes debe resolverse aplicando sólo la ley más especial (lex specialis derogat legem generalera: la ley especial deroga la general)”.(4) S. Mir Puig, Derecho penal: parte general, 8va ed., Barcelona, Ed. Reppertor, 2008, pág. 654. En cuanto al requisito de que uno de los preceptos incluya el hecho de forma más específica que el otro, Mir Puig explica que
[u]n precepto es más especial que otro cuando requiere, además de los presupuestos igualmente exigidos por este segundo, algún otro presupuesto adicional: si un precepto requiere los presupuestos a + b y otro los presupuestos a + b + c, el segundo es más especial que el primero. Todo aquel hecho que realiza el precepto especial realiza necesariamente el tenor literal del general, pero no todo hecho que infringe el precepto general realiza el tenor literal del especial. (Énfasis en el original suprimido y énfasis suplido). Id.
*739 En armonía con lo anterior, también es menester destacar que el tratadista Jiménez de Asúa sostiene que
[...] dos leyes o dos disposiciones legales se hallan en relación de general y especial, cuando los requisitos del tipo general están todos contenidos en el especial, en el que figuran además otras condiciones calificativas a virtud de las cuales la ley especial tiene preferencia sobre la general en su aplicación. (Énfasis suplido). Jiménez de Asúa, op. cit., pág. 546.(5)
A. Cabe señalar que el vínculo de especialidad puede surgir de varias formas. Esto es, puede ocurrir entre una disposición especial y una de carácter general dentro de una misma ley. También, puede darse entre una ley especial y una ley general, como lo es el Código Penal. A su vez, esa relación de especialidad también puede acontecer entre dos leyes especiales. D. Nevares-Muñiz, Código Penal de Puerto Rico, San Juan, Instituto para el Desarrollo del Derecho, 2013, págs. 20-21.
De igual forma, debe aclararse que en virtud del principio de especialidad prevalece la ley especial sobre una materia jurídica que está regulada en términos generales en otra ley, independientemente del orden temporal en que éstas fueron aprobadas. E.L. Chiesa Aponte y A. Febres Jorge, Procedimiento criminal, 77 (Núm. 3) Rev. Jur. UPR 657, 670 (2008). En cuanto a este asunto, y luego de examinar la naturaleza del principio de especialidad, en Pueblo v. López Pérez, 106 DPR 584, 586 (1977), citando a Ji *740 ménez de Asúa, op. cit., pág. 546, este Tribunal expresó lo siguiente:
Las dos disposiciones pueden ser integrantes de la misma ley o de leyes distintas: pueden haber sido promulgadas al mismo tiempo o en época diversa, y en este último caso, puede ser posterior tanto la ley general como la especial. Pero es preciso que ambas estén vigentes contemporáneamente en el instante de su aplicación, porque, en el supuesto contrario, no sería un caso de concurso, sino que presentaría un problema en orden a la ley penal en el tiempo.
Por su parte, en Pueblo v. Pérez Casillas, supra, págs. 398-399, este Tribunal se pronunció en torno al modo de aplicación del principio de especialidad. A esos efectos, se determinó que éste requiere que dos o más disposiciones penales regulen, en aparente conflicto, la misma materia. En Pueblo v. Hernández Villanueva, supra, pág. 894, este Tribunal reafirmó la mencionada normativa al concluir que, como cuestión de umbral, para que pueda aplicar el principio de especialidad es ineludible la existencia de un conflicto que haga incompatible el uso de dos o más disposiciones penales al mismo tiempo. En ese sentido, este Tribunal expresó que es de aplicación el principio de especialidad cuando el conflicto es el resultado de un choque entre una ley o disposición general y una ley o disposición especial. Id.
Ahora bien, considero que el principio de especialidad no exige que las disposiciones legales sean incompatibles o estén reñidas una con la otra. En cuanto a ello, el profesor Chiesa Aponte expresa que no avala la idea de que el principio de especialidad solo aplica cuando existe un conflicto entre dos disposiciones. La razón de ello es que el profesor entiende que “en casos de especialidad, la disposición especial prima sobre la general, no porque hay un conflicto entre ambas disposiciones, sino porque el precepto especial describe de forma más completa el curso de acción antijurídico llevado a cabo por el sujeto”. (Enfasis suplido). L.E. Chiesa Aponte, Derecho penal sustantivo, 2da ed., [s. 1.] *741 Publicaciones JTS, 2013, pág. 90 (.Derecho penal sustantivo ID. Véase, también, Chiesa Aponte, Derecho penal sustantivo I, supra, pág. 349. Esto significa que el principio puede emplearse aunque las disposiciones que aparentemente apliquen no se encuentren en conflicto; ello, pues, la incompatibilidad o el conflicto no resultan necesarios. Chiesa Aponte, Derecho penal sustantivo I, supra, pág. 347.
Ante esa realidad, opino que el mandato del Art. 9 es diáfano: ante una ley general y una especial que regulan la misma materia, predomina la legislación especial, independientemente de si las disposiciones penales están reñidas entre sí. En consecuencia, revocaría, en ese extremo, los pronunciamientos jurisprudenciales con relación al particular emitidos en Pueblo v. Hernández Villanueva, supra.
B. Por otro lado, conviene puntualizar que una vez hallada la especialidad, esta se aplica terminantemente. L. Jiménez de Asúa, op. cit., pág. 547. Ello significa que el principio de especialidad tiene efectos en la naturaleza de la decisión del juez, ya que su fin es obligarlo a aplicar una disposición en circunstancias en las que no existiría tal obligación. Esto, pues el principio de especialidad convierte en imperativo un curso de acción que, de ordinario, sería meramente discrecional. Chiesa Aponte, Derecho penal sustantivo I, supra, pág. 350. En vista de ello, el juez ya no goza de una amplia discreción para decidir cuál de los dos preceptos debe aplicar. Chiesa Aponte, Derecho penal sustantivo II, op. cit., págs. 90-91; Chiesa Aponte, Derecho penal sustantivo I, supra, pág. 350.
Del mismo modo, considero que el Ministerio Público también debe venir llamado a cumplir con la orden expresa plasmada en el Art. 9 de nuestro Código Penal. Ciertamente, tal conclusión no despoja a la figura del fiscal de su derecho a ejercer su discreción para acusar o no, o de acudir en alzada. Más bien, permitiría que el principio de especialidad no quede relegado a letra muerta ni sea una disposición penal cuyo carácter sea meramente teórico.
*742 En fin, sabido es que el principio de especialidad constituye una norma para interpretar la intención legislativa. Pueblo v. Ramos Rivas, supra, pág. 838; Pueblo v. Pérez Casillas, supra, pág. 399. Empero, la aplicación de este principio no es automática, pues deben examinarse los elementos de cada disposición y la manera en que éstos describen o tipifican más adecuadamente la conducta punible.
III
En lo que atañe a la controversia ante nos, es pertinente examinar el propósito y alcance de la Regla 64(p) Procedimiento Criminal, supra. Veamos.
Sabido es que toda determinación de causa probable goza de una presunción de corrección. Sin embargo, es norma reiterada que el remedio exclusivo que tiene el acusado ante una determinación de causa probable en la vista preliminar, ya sea la inicial o en alzada, es la desestimación al amparo de la Regla 64(p) Procedimiento Criminal. Pueblo v. Rivera Cuevas, 181 DPR 699, 707 (2011). En síntesis, este es el instrumento adecuado para que el imputado de delito pueda cuestionar el pliego acusatorio o cualquier cargo incluido en éste.
Como fundamento para la desestimación de una denuncia o acusación criminal, o cualquier cargo incluido en ésta, la Regla 64(p) dispone lo siguiente:
Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho. 34 LPRA Ap. II.
Conforme a la mencionada regla, se pueden invocar dos fundamentos para la desestimación de la denuncia (en casos de delito menos grave) o de la acusación (en casos de delito grave), a saber: (1) que hubo ausencia total de *743 prueba en la determinación de causa probable para acusar; o (2) que se violó alguno de los requisitos o derechos procesales que se deben observar en la vista. Pueblo v. Rivera Cuevas, supra, págs. 707-708; Pueblo v. Rivera Vázquez, 177 DPR 868, 878 (2010); Pueblo v. Branch, 154 DPR 575, 584-585 (2001).
Este Tribunal ha expresado que si se invoca el primer fundamento, el foro judicial debe examinar la prueba desfilada en la vista preliminar, y determinar si esa prueba establece la probabilidad de que esté presente cada uno de los elementos del delito y la conexión del imputado con éste. Pueblo v. Rivera Cuevas, supra, pág. 708; Pueblo v. Rivera Vázquez, supra, pág. 879. En estas circunstancias, aunque la prueba pueda establecer la comisión de otro delito, solo procede desestimar la acusación cuando haya ausencia total de prueba sobre uno o varios elementos del delito imputado, o sobre el vínculo de la persona con éste. Pueblo v. Rivera Cuevas, supra, pág. 708; Pueblo v. Rivera Vázquez, supra, pág. 879.
Por su parte, de invocarse el segundo fundamento, el foro judicial tiene el deber de determinar si la vista preliminar se realizó a tenor con lo establecido en la Regla 23 Procedimiento Criminal, 34 LPRAAp. II, y si se ofrecieron todas las garantías procesales correspondientes. Pueblo v. Rivera Vázquez, supra, pág. 879. No tienen que considerarse los hechos del caso ni la suficiencia de éstos para configurar el delito imputado.
Ambos fundamentos para la desestimación requieren que se demuestre claramente el error que se imputa porque, como expuse, toda determinación de causa probable para acusar goza de una presunción de corrección.
IV
Por tratarse de lo que concierne al caso de epígrafe, resulta imperativo evaluar las disposiciones pertinentes de la *744 Ley Núm. 15-2011 (4 LPRAsec. 1631 et seq.).(6) En ese ejercicio, debemos considerar que nos encontramos ante un estatuto de naturaleza penal, por lo que es deseable que sea la propia Asamblea Legislativa la que precise lo que constituye la conducta delictiva. Pueblo v. Figueroa Pomoles, 172 DPR 403, 416 (2007). Es por ello que los tribunales, a fin de resolver las controversias ante su consideración y adjudicar los derechos de las partes, deben interpretar los estatutos aplicables a la situación de hechos que tienen ante sí, de forma tal que se cumpla con la intención legislativa. Pueblo v. Zayas Rodríguez, 147 DPR 530, 537 (1999). Véase, además, R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Publicaciones JTS, 1987, Vol. 1, pág. 241. Esto, toda vez que el legislador, en su función de promulgar leyes,
[t]rata de corregir un mal, alterar una situación existente, completar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno. Bernier y Cuevas Segarra, op. cit., págs. 245-246.
En repetidas ocasiones hemos expresado que las leyes hay que interpretarlas y aplicarlas en armonía con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver. Pueblo v. Zayas Rodríguez, supra, pág. 537; Col. Ing. Agrim. P.R. v. A.A.A., 131 DPR 735, 756 (1992); Pueblo v. Pizarro Solís, 129 DPR 911, 918 (1992). Asimismo, en el quehacer de interpretar las leyes, debemos considerar la realidad social de donde surgen y operan. Pueblo v. Figueroa Pomoles, supra, pág. 417; Pueblo v. Sierra Rodríguez, 137 DPR 903 (1995); Pueblo v. Arandes de Celis, 120 DPR 530 (1988); Pacheco v. Vargas, Alcaide, 120 DPR 404 (1988). A tales efectos, nuestra función se limita a considerar el contexto *745 de sus términos y la interpretación de la intención legislativa. Pueblo v. Figueroa Pomoles, supra, pág. 419.
En fin, constituye un “principio cardinal de hermenéutica que al lenguaje de una ley debe dársele la interpretación que valida el propósito que tuvo el legislador al aprobarla”. Pueblo v. Figueroa Pomoles, supra, pág. 418, citando a Pacheco v. Vargas, Alcaide, supra, pág. 409. Es decir, la hermenéutica jurídica consiste en auscultar, averiguar, precisar, determinar, cuál ha sido la voluntad legislativa. Pepsi-Cola v. Mun. Cidra et al., 186 DPR 713, 736-737 (2012); IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 738 (2012); Pueblo v. Zayas Rodríguez, supra, pág. 537. Véase, además, Bernier y Cuevas Segarra, op. cit., pág. 241. En ese sentido, este Tribunal debe interpretar la ley en consideración de los fines que persigue y la política pública que la inspira.
Es al amparo de estos principios doctrinales que corresponde examinar la intención del legislador para determinar lo que constituye la conducta tipificada como delito en el Art. 2 de la Ley Núm. 15. Para ello, se debe auscultar, a la luz de su historial legislativo, cuál fue el fin del legislador. Veamos.
Sabido es que en Puerto Rico ha proliferado la práctica de introducir equipos de telecomunicación en las instituciones penales y juveniles y se ha detectado su uso frecuente para realizar o coordinar actividades ilícitas desde la institución. 4 LPRA see. 1631. Por esta razón, se establece como política pública que es un asunto de alto interés evitar las comunicaciones no autorizadas entre las personas ingresadas en instituciones penales o juveniles y el exterior, a los fines de impedir la continuidad de la actividad delictiva. 2011 (Parte 1) Leyes de Puerto Rico 1144. También, se enmarca como política pública que el uso irrestricto de sistemas de comunicaciones, incluyendo el teléfono celular, es uno de los privilegios que pierde la persona que ha incurrido en conducta delictiva. Id.
*746 A esos efectos, la Ley Núm. 15 tiene el objetivo expreso de restringir el uso no autorizado de equipos de telecomunicaciones para impedir la continuidad de la actividad criminal dentro de las instituciones penales. 4 LPRA see. 1631(d). Esta actividad delictiva se refiere a: (1) fraudes vía telefónica; (2) intimidación de testigos; (3) hostigamiento a víctimas de violencia doméstica; (4) continuidad de la administración del “punto” de venta de drogas, y (5) pautar y ordenar asesinatos, entre otras. Véase Exposición de Motivos de la Ley Núm. 15-2011 (Parte 1) Leyes de Puerto Rico 1145. Para el legislador, tal actividad crea un riesgo para la seguridad y el bienestar público, interfiere con el mandato constitucional de rehabilitación y constituye una manera de burlar las reglas de disciplina y conducta de las instituciones. íd.; 4 LPRA sec. 1631(c).
De lo que antecede se deducen varias conclusiones. Se puede apreciar que era evidente la preocupación del legislador por evitar el uso de todo equipo que permita la transmisión de señales radiales o acceso a la red celular de comunicaciones o a internet en las instituciones penales. Para ello, se promovió una vigorosa política pública en aras de impedir la continuidad de la actividad criminal dentro de las instituciones penales y hacia el exterior. Inclusive, queda claro que para el legislador existe un interés apremiante de que se legisle para controlar dicha actividad, ya que el uso de sistemas de comunicación amenaza la vida y el bienestar de los ciudadanos y, a su vez, peijudica el proceso de rehabilitación de las personas internas en la institución. Véase Exposición de Motivos de la Ley Núm. 15-2011 (Parte 1) Leyes de Puerto Rico 1147. En vista de ello, no podemos ignorar lo dispuesto en la Ley Núm. 15 y en la intención legislativa.
En armonía con lo anterior, el Art. 2 de la Ley Núm. 15 dispone, en lo relativo a la controversia ante nos, que la posesión por un confinado de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier *747 aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. 4 LPRA see. 1632. No cabe duda de que este delito busca resguardar la referida intención legislativa y política pública enmarcada en la Ley Núm. 15; esto es, restringir las comunicaciones no autorizadas desde las instituciones penales para evitar la continuidad de la actividad criminal. Adviértase que el delito en cuestión prohíbe expresamente los equipos de telecomunicación no autorizados, “incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución”. (Enfasis suplido). 4 LPRA see. 1632.
Una simple lectura del artículo lleva a concluir que el legislador tipificó como delito el uso de todo equipo que transmita señales o tenga acceso a la red de comunicaciones o a internet. En otras palabras, se requiere que el equipo tenga la posibilidad de transmitir señales o acceder a la red de comunicaciones o a internet. Obviamente, el legislador reconoce que el equipo más común es el celular, por lo que lo incluye expresamente a modo descriptivo. Nótese que la frase “que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución”, es un elemento del delito que aplica a todo equipo de telecomunicación, incluyendo, obviamente, al teléfono celular. Es por ello que resulta obligatorio determinar que para cometer este delito se requiere que un confinado posea cualquier equipo de telecomunicación que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a internet. Indudablemente, esta interpretación no se aparta de las normas de *748 hermenéutica que nos rigen como jueces, al mismo tiempo que se observa la política pública de evitar las comunicaciones no autorizadas proscritas por el legislador al aprobar la Ley Núm. 15, pero sin ignorar los principios y garantías de derecho penal que cobijan al acusado en este caso en particular.
Por su parte, para asegurar que se utilicen únicamente los sistemas telefónicos, de comunicaciones o informáticos que provee la institución, la Ley Núm. 15 establece que a toda persona que ingrese a una institución penal o juvenil “se le dará a su ingreso previa notificación verbal y escrita de esta restricción, incluyendo notificación de que está prohibida la posesión y el uso de cualquier sistema de comunicación no autorizado por la Administración”. (Enfasis suplido). 4 LPRA sec. 1634(a). A tono con ello, la Certificación de Orientación sobre Ley Núm. 15 de 18 de febrero de 2011, advierte que el confinado que sea sorprendido y se le ocupe cualquier tipo de equipo, como teléfono celular o aditamento que permita la transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica de internet, que no sea el provisto por la institución, incurrirá en el delito grave de cuarto grado. Véase Apéndice, pág. 10.
V
A la luz de la normativa planteada, procedo a exponer mi parecer en torno a la controversia del epígrafe.
Surge de los autos que al señor Cordero Meléndez se le imputó poseer un equipo de telecomunicación no autorizado (celular con chip y batería) que permite acceso a la red celular de comunicaciones. En vista de que se determinó causa para acusar por el Art. 277 del Código Penal de 2012, el peticionario presentó una moción de desestimación al amparo de la Regla 64(p). En síntesis, alegó que se quebrantó el principio de especialidad, toda vez que tanto en la denun *749 cia como en la acusación se incluyeron todos los elementos del delito de una disposición penal que regulaba con mayor especificidad la materia atribuida, pero se le imputó el delito contenido en el precepto penal general. En otras palabras, para el señor Cordero Meléndez el Ministerio Público contravino el principio de especialidad al descartar imputarle la disposición penal especial dispuesta en el Art. 2 de la Ley Núm. 15, la cual regulaba más específicamente la conducta atribuida, y, en cambio, acusarlo por la ley general. En consecuencia, solicitó la desestimación de la acusación. Ante ello, los foros recurridos denegaron la petición en cuestión.
Ponderados los documentos que obran en el expediente, en conjunto con la doctrina jurídica aplicable, considero que el planteamiento del señor Cordero Meléndez tiene méritos. Las circunstancias del presente caso no dejan duda de que se actuó en contravención al principio de especialidad. Por ello, sostengo que los foros recurridos incidieron en el curso de acción seguido. Me explico.
A poco examinar lo expuesto, uno se percata de que si bien ambas disposiciones legales aluden a la misma materia, de su texto expreso surgen distinciones en términos de especificidad. Evidentemente, no nos encontramos ante delitos con elementos idénticos. El Art. 2 de la Ley Núm. 15 prohíbe la posesión y el uso de equipos de telecomunicación no autorizados que permiten la transmisión de señales radiales, acceso a la red de comunicaciones o conexión a internet. Como vimos, la parte expositiva de la ley disipa cualquier otra interpretación al respecto. Ésta es clara al recalcar que “[e]l uso de sistemas de comunicación desde las instituciones penales y civiles amenaza la vida y bienestar del pueblo y perjudica el proceso de rehabilitación que es mandato constitucional. Por tanto, existe un interés público apremiante de que se legisle para controlar dicha actividad”. Véase Exposición de Motivos de la Ley Núm. 15-2011, (Parte 1) Leyes de Puerto Rico 1147.
*750 Ciertamente, el Art. 2 de la Ley Núm. 15 describe con mayor detalle aquella conducta que también se tipifica como delito en el Art. 277 del Código Penal. No obstante, una lectura tanto de la denuncia como de la acusación permite concluir, sin ambages, que el delito imputado al señor Cordero Meléndez está descrito con mayor especificidad en el Art. 2 de la Ley Núm. 15. Sin duda, el imputar al señor Cordero Meléndez la posesión de un equipo de telecomunicación (celular con chip y batería) que permite el acceso a la red celular de comunicaciones, hace que el Art. 2 de la Ley Núm. 15 incluya ese elemento adicional que describe o tipifica con mayor especificidad la conducta punible. Esto es, el Art. 2 contiene esa condición calificativa en virtud de la cual la ley especial prevalece sobre la general en su aplicación.(7) Ello, pues, el Art. 277 de nuestro precepto penal general solo tipifica como delito la mera posesión de teléfonos celulares u otros medios de comunicación portátil.
Por lo tanto, no alcanza a persuadirme el argumento del Estado de que entre la disposición general y la especial existe una duplicidad de disposiciones legales o una idéntica tipificación de la conducta antijurídica. Tampoco tiene razón el Estado cuando argumenta que en este caso no es de aplicación el principio de especialidad, ya que la pena de la ley especial es más benigna que aquella establecida en la ley general.(8) Este planteamiento no encuentra sostén en la li *751 teratura jurídica sobre el tema ni en nuestros pronunciamientos jurisprudenciales con relación al particular.(9)
Resalto que la Ley Núm. 15 no ha sido derogada por el legislador y ésta contaba con total vigencia al momento de los hechos imputados. Así las cosas, no es rol de los foros judiciales derogar implícitamente un esquema legal vigente que regula con suficiente especificidad la conducta imputada al peticionario en aras de aplicar una disposición general. Sin duda, los foros recurridos incidieron al arrojar a las sombras el principio de especialidad, pretendiendo derogarlo sin facultad para ello. Por ello, no puedo avalar un curso de acción que, a todas luces, reduciría a letra muerta el aludido principio. Más aún, cuando sabemos que tanto los foros judiciales como el Ministerio Público deben observar el mandato expreso enmarcado en este cardinal principio de derecho.
Ahora bien, entiendo que lo anterior no dispone de la totalidad de la controversia que nos ocupa. Esto es, resta por atender la solicitud de desestimación al amparo de la Regla 64(p) Procedimiento Criminal, fundada en que se quebrantó el principio de especialidad. Con relación a ello, opino que procede aplicar la normativa jurídica vigente para disponer de tal petición. En otras palabras, de estimar que hubo ausencia total de prueba sobre uno o varios de los elementos del delito aplicable o que se infringió al *752 guno de los requisitos o derechos procesales que se deben observar, la acción penal debe desestimarse.
En el presente caso, el Ministerio Público admitió en la vista en alzada que no presentó los cargos conforme al principio de especialidad, pues no contaba con prueba para imputar el delito especial. Así las cosas, el foro primario encontró causa para acusar por el precepto penal general. Ello, en violación al mandato dispuesto en el Art. 9 del Código Penal, supra. Considero que la justificación de que es más fácil probar los elementos del delito general que del delito especial, no es fundamento válido para quebrantar el principio de especialidad.
Ante el particular escenario de la controversia de epígrafe, opino que procedía la desestimación de la acusación contra el señor Cordero Meléndez. Recordemos que el Ministerio Público admitió en vista preliminar en alzada que no contaba con la prueba necesaria para acusar al peticionario por el precepto penal especial que describía o tipificaba más específicamente la conducta imputada. Conforme a lo dispone la Regla 64(p) y su jurisprudencia interpretativa, ello constituye fundamento para la desestimación de la acusación debido a la ausencia de prueba sobre uno o varios de los elementos del delito aplicable.
VI
Al amparo de los fundamentos enunciados, disiento del dictamen emitido por una Mayoría de este Tribunal. En su lugar, revocaría la determinación del Tribunal de Apelaciones y ordenaría la desestimación de la acusación contra el señor Cordero Meléndez.

 En lo pertinente, del Código Penal de 2012 surge que se comete una infracción al Art. 277 cuando:
“[Una] persona confinada en una institución penal o juvenil que, sin estar autorizado, posea teléfonos celulares u otros medios de comunicación portátil, o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, será sancionado con pena de reclusión por un término fijo de tres (3) años”. (Énfasis suplido). 33 LPRA see. 5370.
Adviértase que en virtud de la Ley Núm. 124-2013, este artículo fue renumerado para constituir el Art. 275. No obstante, para propósitos de esta opinión disidente, continuaré haciendo alusión al Art. 277. Además, debo señalar que si bien el Art. 277 fue enmendado por la Ley Núm. 246-2014, el párrafo del artículo al que aquí se hace referencia permaneció inalterado.

 El Art. 2 dispone, en lo pertinente:
“La posesión por una persona internada en una institución penal o juvenil, de equipos de telecomunicación no autorizados, incluyendo teléfonos celulares y cualquier tipo de equipo o aditamento que permita transmisión de señales radiales o acceso a la red celular de comunicaciones o a una conexión inalámbrica a Internet que no sea el acceso provisto por la institución, constituirá delito grave de cuarto grado, o la falta equivalente en el caso de un menor de edad. Esta infracción será tomada en consideración en la evaluación de elegibilidad para libertad bajo palabra, probatoria, programa de desvío o de trabajo, bonificación o cualquier otro beneficio al que la persona pudiera ser elegible”. (Énfasis suplido). 4 LPRA see. 1632.

 El concurso aparente de leyes surge cuando más de un precepto penal concurre en su aplicación a un hecho delictivo, lo cual da lugar a un conflicto en términos de cuál de las disposiciones penales habrá de aplicar. Se dice que es un conflicto aparente debido a que se resolverá aplicando reglas de interpretación que tomen en consideración la relación de jerarquía en que se encuentran las diversas normas que concurran. Esta clasificación de relaciones de jerarquía entre las normas se resume en: especialidad, consunción y subsidiariedad. D. Nevares-Muñiz, Derecho penal puertorriqueño: parte general, 6ta ed., San Juan, Instituto para el Desarrollo del Derecho, 2010, págs. 127-128.

 Tal y como reseñé, en nuestro ordenamiento jurídico ello es así ante el mandato expreso del legislador contenido en el Art. 9 de nuestro Código Penal, 33 LPRA see. 5009.

 Los fundamentos discutidos en este acápite llevan a la inexorable conclusión de que, a diferencia de lo que se infiere del dictamen emitido por una Mayoría de este Tribunal, para que se aplique el principio de especialidad no es suficiente con meramente encontrar una disposición general y una especial. De la doctrina jurídica sobre el tema se infiere que tiene que haber algo más. Ante ello, es forzoso determinar que no es posible aludir al principio de especialidad cuando se trata de preceptos idénticos. Una cosa es que ambos delitos regulen la misma materia, tal como lo requiere el principio de especialidad, y otra es que los delitos sean idénticos. Conforme a los fundamentos expuestos, en este último supuesto existe, de entrada, un defecto de especialidad. Evidentemente, en el caso de autos existe una relación de especialidad entre los preceptos aplicables, pero, a diferencia de lo que dictamina una Mayoría de este Tribunal, no nos encontramos ante delitos idénticos. Como veremos, la ley especial contiene y describe más específicamente el hecho que la ley general.

 Conocida como Ley que Prohíbe el Uso de Teléfonos Celulares por Confinados en Instituciones Penales o Juveniles y el Exterior.

 Valga puntualizar, además, que es por conducto expreso de la Ley Núm. 15 que el Departamento de Corrección y Rehabilitación está obligado a notificar, a toda persona que ingrese a una institución, la prohibición de poseer y utilizar cualquier sistema de comunicación no autorizado por esta agencia.

 Con relación a este argumento, en el 2014 la Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 246-2014, con el propósito de enmendar el Código Penal hasta entonces vigente. En lo que aquí concierne, se modificó el texto del Art. 307 del Código Penal de 2012 para disponer que los delitos graves que se tipifican en leyes penales especiales como delito grave de cuarto grado:
“[C]onllevará[n] una pena de reclusión restricción terapéutica, restricción domiciliaria, servicios comunitarios, o combinación de estas penas, por un término fijo que no puede ser menor de seis (6) meses un (1) día ni mayor de tres (3) años, según la presencia de atenuantes o agravantes a la pena. En tal caso, la persona puede ser considerada para libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir el cincuenta (50) por ciento del término de reclusión impuesto”. 33 LPRA see. 5415(e).
*751 Nótese que las recientes enmiendas tuvieron el efecto de modificar la pena impuesta para el Art. 2 de la Ley Núm. 15, así como sus condiciones colaterales. Por tanto, las enmiendas efectuadas llevan a la conclusión de que la pena estatuida en el Art. 2 puede resultar más benigna en comparación con la establecida para el Art. 277 del Código Penal. Esto, ya que a diferencia de la pena fija de reclusión de 3 años que apareja el Art. 277, se permite que aquel que infrinja el Art. 2 pueda cumplir la sentencia impuesta mediante pena de reclusión, restricción terapéutica, restricción domiciliaria, servicio comunitario o una combinación de éstas.

 El principio de altematividad al cual alude la Oficina del Procurador General en su Escrito en Cumplimiento de Orden solo se aplicará en defecto de relación de especialidad, subsidiariedad o consunción. Ahora bien, la única posibilidad de que no sean aplicables los criterios anteriores es que por un defecto legislativo dos o más preceptos vengan a prever exactamente el mismo hecho. Véase S. Mir Puig, Derecho penal: parte general, 8va ed., Barcelona, Ed. Reppertor, 2008, págs. 657-658.