Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FELIX GONZÁLEZ RÍOS<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300633 | Revisión Administrativa procedente de la Oficina de Programas Residenciales y de Tratamiento en Comunidad<br><br>Casos Núm. D IS2016G0033, D IS2016G0034<br><br>Sobre:<br>Programas de Pase Extendido por Condiciones de Salud (Ley 25 del 19 de julio de 1992) |

Panel integrado por su presidente, el Juez Sánchez Ramos, Juez Pagán Ocasio y el Juez Marrero Guerrero.

Marrero Guerrero, Juez ponente

### SENTENCIA

En San Juan, Puerto Rico, a 15 de febrero de 2024.

Comparece por derecho propio y de forma *pauperis* ante este Tribunal el Sr. Félix González Ríos (en adelante, señor González Ríos o recurrente), quien se encuentra confinado bajo la custodia del Departamento de Corrección y Rehabilitación (en adelante, DCR o parte recurrida). Solicita que revoquemos la *Determinación de la Evaluación para el Programa de Pase Extendido por Condición de Salud (Ley 25)* emitida por el DCR el 13 de octubre de 2023 y notificada el 4 de diciembre de 2023.[1] Mediante dicho dictamen, la parte recurrida denegó al recurrente beneficiarse del privilegio de pase expendido por motivos de salud, al entender que existe un proceso penal pendiente en su contra ante el TPI.

Por los fundamentos que expondremos a continuación, *revocamos* la determinación del DCR, por considerar que no existe

---

[1]Apéndice del *Escrito en cumplimiento de resolución* del DCR, Anejo 1, págs 49-53.

un proceso penal pendiente en contra del recurrente y devolvemos el asunto a dicha entidad para que continúe la evaluación de la elegibilidad del recurrente para beneficiarse del referido Programa. Explicamos.

**-I-**

El 22 de noviembre de 2022, el señor González Ríos presentó una solicitud al Programa de Salud Correccional para someterse a una evaluación médica con el objetivo de ser considerado para el privilegio de pase extendido debido a su estado de salud.[2] En respuesta a esta solicitud, el 16 de agosto de 2023, el recurrente fue evaluado por la internista del DCR, la doctora Damaris Silva Santa. Como parte de este proceso, la doctora recomendó remitir el caso del señor González Ríos para evaluación por parte del *Panel de Médicos por Salida por Ley 25/27* del Programa de Salud Correccional (en adelante, Panel Médico), debido a sus condiciones deformantes e incapacitantes severas en estado avanzado.[3] Posteriormente, el 23 de agosto de 2023, el Panel Médico recomendó la concesión del privilegio de pase extendido al solicitante.[4]

Así las cosas, el 26 de septiembre de 2023, la parte recurrida remitió el caso del señor González Ríos a una investigación de campo para determinar la viabilidad de su excarcelación.[5] Como parte de este procedimiento, el DCR llevó a cabo una evaluación de la idoneidad del hogar propuesto por el recurrente. La residencia incluida en el plan de salida se encuentra ubicada en el Barrio Borinquén, Sector Playuela, del municipio de Aguadilla. Además, el DCR recibió el insumo de los vecinos del hogar propuesto, así como de las víctimas de los delitos por los cuales el señor González Ríos se encuentra confinado.

---

[2] *Íd.*, pág. 5.
[3] *Íd.,* págs. 7-10.
[4] *Íd.,* págs. 16-20.
[5] *Íd.,* págs. 24-25.

En vista de lo anterior, el 28 de septiembre de 2023, el DCR emitió una *Certificación de Notificación* [*a las víctimas de delito*].[6] En esta, especificó que una de las personas que fue víctima de los delitos perpetrados por el señor González Ríos expresó su oposición a la concesión del privilegio. Ante ello, se le informó sobre su derecho a comparecer a una vista a esos efectos.[7]

Por otra parte, el 10 de octubre de 2023, el DCR suscribió el *Informe Breve P.E.M.E.*[8] En síntesis, la parte recurrida detalló en dicho informe que: (1) el señor González Ríos propuso el hogar de su madre, la señora Carmen Ríos Medina, de setenta y cuatro años (74); (2) la señora Ríos Medina consiente en acoger a su hijo en su residencia; (3) al investigar el hogar propuesto por el recurrente, se encontró una residencia de tres (3) cuartos y dos (3) baños, sin proximidad a escuelas o servicios de cuidado infantil; (4) en el hogar propuesto no residen menores de edad; (4) los ingresos mensuales de la residencia son de $1,620.00, mientras que los gastos ascienden a 460.00; y (5) la comunidad no expresó objeciones a la concesión del privilegio.

Finalmente, 13 de octubre de 2023, el DCR emitió la *Determinación de la Evaluación para el Programa de Pase Extendido por Condición de S[a]lud (Ley 25)* en la que denegó el privilegio de pase expendido al señor González Ríos.[9] El DCR fundamentó esta decisión en el hecho de que el recurrente tiene una sentencia mixta.[10] Particularizó que, al cumplir la primera sentencia de diez

---

[6] *Íd.,* pág. 27.
[7] *Íd.,* págs. 27-32.
[8] *Íd.,* págs. 34-35.
[9] *Íd.,* págs. 49-53.
[10] Cabe señalar que, el señor González Ríos se encuentra confinado por dos infracciones al Artículo 133, incisos (b) y (f), del Código Penal de Puerto Rico. La primera infracción resultó en una sentencia de diez (10) años de reclusión, mientras que la segunda acarreó una pena adicional de quince (15) años de reclusión, que debe cumplirse de manera consecutiva. No obstante, el TPI dispuso que, dos (2) meses antes de cumplir la primera condena, el recurrente deberá comparecer al foro primario para referir su caso ante un Técnico Sociopenal del Programa de la Comunidad de Bayamón, con el fin de evaluar su idoneidad para cumplir la segunda sentencia bajo libertad a prueba. Véase Apéndice del *Escrito en cumplimiento de resolución* del DCR, págs. 1-2.

(10) años de reclusión, deberá comparecer ante la sala sentenciadora del TPI para la disposición de la sentencia suspendida de quince (15) años que le fue impuesta.[11]

Inconforme con la decisión, el 5 de diciembre de 2023 el señor González Ríos suscribió la petición que tenemos ante nuestra consideración, la cual fue recibida en la Secretaría de este Tribunal el 8 de diciembre de 2023.[12] A través de su recurso, el recurrente solicita la cancelación de su *Sentencia Mixta* para beneficiarse del privilegio de pase extendido por razones de salud. Sostiene que lo establecido en su sentencia no representa un delito pendiente, sino más bien un acuerdo. Asimismo, señala que su estado de salud constituye una situación imprevista.[13]

El 29 de enero de 2023, el DCR compareció ante nosotros y sostiene que el recurrido cuenta con un proceso criminal pendiente ante el foro primario. Específicamente, arguye que el señor González Ríos deberá comparecer ante la sala sentenciadora del TPI dos (2) meses antes de cumplir la primera pena que le fue impuesta. Con este razonamiento, el DCR concluye que la inminencia de esta vista implica que el recurrente continúa "pendiente de algún proceso criminal iniciado en su contra ante el tribunal estatal". Por lo tanto, aduce que la negativa de no conceder el privilegio del señor González Ríos pretende "cumplir con lo ordenado por el Tribunal de Primera Instancia: que una persona bajo su custodia comparezca a un procedimiento judicial sobre una pena que aún no ha comenzado a extinguir".[14]

Por otro lado, el DCR reconoce los serios problemas de salud del recurrente, pero expone que es necesario asegurar su comparecencia futura ante el tribunal en relación con la segunda

---

[11] *Íd.,* pág. 49.
[12] El recurso del señor González Ríos fue titulado *Aveás Corpus* [sic].
[13] *Aveás Corpus* [sic] del recurrente, pág. 5.
[14] *Escrito en cumplimiento de resolución* del DCR, págs. 7-8.

pena impuesta. Por último, argumenta que el señor González Ríos carece de evidencia sustancial en el expediente administrativo que tienda a rebatir la presunción de corrección y legalidad que respalda la decisión administrativa.

Es importante destacar que, el 12 de diciembre de 2023, el señor Rodríguez González interpuso una solicitud de reconsideración ante el Programa de Pase Extendido por Condición de Salud Ley 25 del DCR. En su recurso, argumentó que: (1) se encuentra postrado en cama debido a su condición crítica de salud; (2) cuenta con hogar viable, recursos económicos y familiares responsables; y (3) actualmente está bajo custodia mínima. Por consiguiente, respaldó su solicitud con documentación médica que incluye diagnósticos y fotografías para su reevaluación. Sin embargo, el 15 de diciembre de 2023, notificada el 11 de enero de 2024, el DCR emitió una *Respuesta de Reconsideración* en la que reiteró su posición. Además, subrayó que el recurrente no satisface el requisito establecido en el Artículo VI, inciso 15, del Reglamento Núm. 9488 del 9 de agosto de 2023, también conocido como Programa Integral de Reinserción Comunitaria. Lo anterior, debido a que tiene una condena total de veinticinco (25) años, la cual se divide en diez (10) años de reclusión y luego una sentencia suspendida de quince (15) años, según la *Sentencia Mixta* emitida por el TPI de Bayamón, el 20 de marzo de 2017, por infracciones al Artículo 133 del Código Penal.[15]

Con el beneficio de la comparecencia de ambas partes, procedemos a detallar la normativa aplicable en este caso. Veamos.

---

[15] El tracto procesal reseñado demuestra que el recurrente acudió ante este Tribunal antes de que presentara la referida "reconsideración", por lo cual el recurso de referencia es oportuno.

**-II-**

**A.**

Es norma conocida que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 88-89. (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Por estas razones, dichas determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Oficina de Ética Gubernamental v. Martínez Giraud, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). **No obstante, tal norma no es absoluta, por lo que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.**

Por esa misma línea, en *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> *Los tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la*

*actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.*

Del mismo modo, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), estableció el marco de revisión judicial de las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra.* La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) **si las conclusiones de derecho del ente administrativo fueron correctas.** *Íd.*; *Oficina de Ética Gubernamental v. Martínez Giraud, supra; Torres Rivera v. Policía de PR, supra*; *Nobbe v. Jta. Directores, supra*; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Por lo tanto, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Oficina de Ética Gubernamental v. Martínez Giraud, supra*; *Super Asphalt v. AFI y otros, supra.*

Ahora bien, **las determinaciones de derecho pueden ser revisadas en su totalidad**. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra.* Esto, pues el Tribunal Supremo ha dispuesto que la deferencia que le deben los

tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.*; *Oficina de Ética Gubernamental v. Martínez Giraud, supra.*

Finalmente, destacamos que el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Lo anterior ya que la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia. *Íd.*

**B.**

La Constitución del Estado Libre Asociado de Puerto Rico establece como política pública del Estado la reglamentación de las instituciones penales con el objetivo de facilitar la rehabilitación moral y social. Artículo IV, Sec. 19, LPRA Tomo I. Para dar cumplimiento a este mandato, la Asamblea Legislativa otorgó al Secretario o la Secretaria del Departamento de Corrección y Rehabilitación (DCR), entre otras atribuciones, la autoridad para adoptar, establecer, desarrollar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos, con el propósito de supervisar el funcionamiento eficaz del Departamento y de los programas y servicios que ofrece. Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, según enmendado (Plan de reorganización), 3 LPRA Ap. XVIII, Art. 7 (aa). Asimismo, le confirió la facultad de implementar programas que brinden servicios médicos y hospitalarios adecuados para la

población correccional, dirigidos a la prevención de enfermedades y el diagnóstico y tratamiento de los pacientes. Plan de Reorganización, *supra*, Art. 7 (g).

En concordancia con lo anterior, el Secretario o la Secretaria del DCR tiene facultad para establecer programas que posibiliten a las personas que se encuentran confinadas cumplir parte de su sentencia fuera de la institución correccional. Estos programas de desvío deben contar con reglamentos que detallen los objetivos, la operación, los criterios y las condiciones para la concesión del privilegio. Plan de Reorganización, *supra*, Art. 16. Además, cada reglamento debe incluir los criterios, condiciones y procedimientos para la revocación de este privilegio. *Íd.*

**c.**

El DCR implementó el Programa Integral de Reinserción Comunitaria (Programa), que abarca los siguientes subprogramas: (1) Programas Comunitarios de Base Religiosa y de Fe; (2) Programas Comunitarios Seculares; (3) Restricción domiciliaria por incumplimiento a las órdenes del Tribunal, (4) Pase Extendido por Condiciones de Salud; y (5) Pase Extendido con Monitoreo Electrónico. A través de estos subprogramas, los miembros de la población correccional tienen la oportunidad de cumplir parte de su sentencia fuera de la institución correccional. El objetivo principal de estos proyectos es viabilizar tratamientos individualizados para contribuir a la rehabilitación de aquellas personas que han cometido delitos mediante una reinserción adecuada a la comunidad sin menoscabar la seguridad pública. Reglamento del Programa Integral de Reinserción Comunitaria, Reglamento Núm. 9488 del 9 de agosto de 2023 (Reglamento Núm. 9488), pág. 2. Cada solicitante debe cumplir con una serie de requisitos aplicables a cada subprograma, además de satisfacer los requisitos específicos correspondientes al subprograma al que aplique.

Como parte de la evaluación de los candidatos a los subprogramas, se recoge el insumo de las víctimas de los delitos por los cuales fueron sentenciados. *Íd.,* pág. 5. Luego de auscultar la posición de las víctimas, el Técnico de Servicios Sociopenales emitirá una recomendación al Secretario o la Secretaria del DCR y a la División de Programas Comunitarios para una determinación final. *Íd.,* pág. 7. También se recopila información confiable que evidencie que el miembro de la población correccional no representa un riesgo para su propia seguridad, la de sus compañeros, la comunidad y las víctimas o partes perjudicadas. *Íd.,* pág. 11.

En otra instancia, como parte de los requisitos generales de elegibilidad para cualquier subprograma, **el candidato o la candidata no podrá estar pendiente de algún proceso criminal iniciado en su contra ante el tribunal estatal o federal.** *Íd.,* pág. 12.

Respecto a los requisitos para ser elegible al Pase Extendido por Condiciones de Salud, conforme establece la Ley Núm. 25 del 19 de julio de 1992, Ley para el Egreso de Pacientes de S.I.D.A. y de otras Enfermedades en su Etapa Terminal que Están Confinados en las Instituciones Penales o Internados en las Instituciones Juveniles de Puerto Rico (Ley Núm. 25), 4 LPRA secs. 1601-1607, el solicitante debe tener una prognosis de vida corta de menos de seis (6) meses o **presentar condiciones fisiológicas limitantes o incapacitantes**. Reglamento Núm. 9488, *supra*, pág. 15. Estas condiciones deberán estar respaldadas por una certificación médica que incluya sus debidas recomendaciones. *Íd.* Además, la elegibilidad para este beneficio está sujeta a la recomendación que emita un panel médico del DCR con ese propósito. *Íd.*

Por otro lado, la persona que solicite el pase extendido por condiciones de salud deberá contar con un hogar viable y familiares disponibles para asumir su cuidado. *Íd.*, págs. 16 y 17. Asimismo,

se requiere que la persona **no tenga delitos pendientes ante ningún Tribunal de Justicia**. *Íd.*, pág. 16.

Es importante destacar que, aparte de los criterios específicos para participar en los subprogramas de desvío, podría exigirse que los participantes sean sometidos a monitoreo y supervisión mediante dispositivos de monitoreo electrónico. *Íd.*, pág. 24. En cuanto al Programa de Pase Extendido por Condiciones de Salud, se llevará a cabo un seguimiento del cuidado proporcionado a estos pacientes. Este seguimiento podría realizarse mediante visitas al hogar por parte del personal médico y social debidamente capacitado, con la frecuencia necesaria. Ley Núm. 25 de 1992, supra, Art. 7, sec. 1607.

**D.**

Resulta ampliamente conocido que **toda acción penal en nuestro ordenamiento jurídico comienza con la determinación de causa probable para citar o arrestar por parte de un juez o jueza**. *Pueblo v. Martínez Hernández*, 208 DPR 872, 880 (2022); *Pueblo v. Thompson Faberllé*, 180 DPR 497, 504 (2010); *Pueblo v. Rivera Martell*, 173 DPR 601, 608 (2008); *Pueblo v. Irizarry Quiñones*, 160 DPR 544, 555 (2003). A partir de este momento, la persona se encuentra "acusada" y, por lo tanto, sujeta a contestar una acusación o denuncia en su contra, así como "propensa a ser convicta". *Pueblo v. Miró González*, 133 DPR 813, 820 (1993); *Pueblo v. Carmen Centrale Inc.*, 46 DPR 494, 498 (1934).

Por otro lado, el Tribunal Supremo ha expresado que el proceso penal es un mismo y continuo proceso judicial que **finaliza con el fallo o la sentencia**. *Pueblo v. Pérez Pou*, 175 DPR 218, 229 (2009). Además de la adjudicación en los méritos de la causa penal, otros eventos procesales pueden dar por terminada la acción contra la persona imputada de delito, como, por ejemplo, la determinación de "no causa" para presentar una acusación en la

etapa de vista preliminar en alzada, puesto que esta, por su naturaleza y finalidad, impide el comienzo de otro proceso por ese delito. *Íd.*; *Pueblo v. Ríos Alonso*, 149 DPR 761, 768 (1999). De igual forma, la resolución que declare "con lugar" una moción de desestimación también pone fin a la acción penal. *Pueblo v. Pérez Pou*, supra, pág. 230; *Pueblo v. Camacho Delgado*, 175 DPR 1 (2008); *Pueblo v. Carrión Rivera*, 159 DPR 633 (2003).

En relación con el fallo, las Reglas Procedimiento Criminal definen este término como aquel pronunciamiento hecho por el tribunal condenando o absolviendo a la persona acusada de delito. Regla 160 de Procedimiento Criminal, 34 LPRA Ap. II, R. 160. De otro lado, la sentencia se refiere al pronunciamiento hecho por el tribunal en cuanto a la pena que se le impone a la persona acusada. *Íd.*, R. 162. Una vez dictada la sentencia, se entregará inmediatamente al funcionario que deba ejecutarla una copia certificada de la misma, la cual será suficiente para su ejecución, sin que fuere necesaria ninguna otra orden o autorización para justificar o pedir tal ejecución. *Íd.*, R. 175.

### E.

En nuestro ordenamiento jurídico, el foro primario podrá suspender los efectos de una sentencia de reclusión en todo caso de delito grave y todo caso de delito menos grave que surja de los mismos hechos o de la misma transacción, de conformidad con los requisitos y excepciones establecidos en la Ley Núm. 259 de 3 de abril de 1946, conocida como Ley de Sentencia Suspendida y Libertad a Prueba (Ley de Sentencia Suspendida), 34 LPRA sec. 1027. En ese sentido, esta ley provee una medida alterna a la pena de cárcel. *Pueblo v. Molina Virola*, 141 DPR 714, 717 (1996).

El beneficio de "sentencia suspendida" también es conocido como "libertad a prueba" o "probatoria". *Íd.* En esencia, este beneficio implica la suspensión de la ejecución de la sentencia para

brindarle a la persona condenada de delito la oportunidad de quedar en libertad durante todo o parte del término de la pena, sujeta a que observe buena conducta y cumpla con todas las restricciones impuestas por el tribunal. *Íd.*; *Pueblo v. Vélez Torres*, 2023 TSPR 66, 212 DPR ___; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 881 (2010); *Pueblo v. Zayas Rodríguez*, 147 DPR 530, 535-536 (1999).

La duración del período de libertad a prueba será igual a la duración del período establecido en la sentencia. Ley de Sentencia Suspendida, *supra*, Art. 3, sec. 1028. Durante este período, la Administración de Corrección ejercerá el nivel de supervisión que estime necesario para lograr la rehabilitación de la persona y proteger a la comunidad. Además, toda persona puesta a prueba estará sujeta a un régimen disciplinario de vida y a un plan de tratamiento, cuya duración y condiciones serán determinadas por la Administración de Corrección, según el problema específico de conducta presentado por la persona puesta en libertad a prueba. *Íd.*

**-III-**

En el presente caso, debemos determinar si el DCR incidió al denegarle al señor González Ríos beneficiarse del privilegio de pase expendido por razones de salud, bajo la interpretación de que existe un proceso penal pendiente en su contra ante el TPI.

Es ampliamente conocido que los Tribunales debemos ser deferentes en torno a las decisiones administrativas, pero tal deferencia cederá cuando la determinación no esté basada en evidencia sustancial, **cuando el ente administrativo haya errado en la aplicación de la ley y cuando la actuación resulte arbitraria, irrazonable e ilegal**. *Torres Rivera v. Policía de Puerto Rico*, supra.

Después de analizar minuciosamente el expediente ante nuestra consideración y el derecho aplicable al caso, encontramos razones suficientes que justifican preterir la deferencia que de

ordinario es otorgada a una determinación administrativa. En consecuencia, llegamos a la conclusión de que el DCR incidió en su decisión. Explicamos a continuación.

Según se desprende de los autos, el señor González Ríos presentó una solicitud para la concesión del beneficio de pase extendido por razones de salud.[16] Luego de la correspondiente evaluación médica, el DCR denegó conceder el privilegio de pase expendido **bajo el único fundamento de que el recurrente tiene pendiente un proceso criminal iniciado en su contra ante el tribunal estatal**.[17] El DCR sostiene que, una vez el señor González Ríos cumpla la primera sentencia de diez (10) años de reclusión, deberá comparecer ante la sala sentenciadora del TPI para la disposición de la sentencia suspendida de quince (15) años que le fue impuesta. Agrega que, la negativa de no conceder el privilegio pretende cumplir con la orden del foro primario, a saber: "que una persona bajo su custodia comparezca a un procedimiento judicial sobre una pena que aún no ha comenzado a extinguir".

De acuerdo con nuestro ordenamiento jurídico, toda acción penal inicia con la determinación de causa probable para citar o arrestar por parte de un juez o una jueza. *Pueblo v. Martínez Hernández,* supra, pág. 880. A partir de ese momento, la persona enfrenta un proceso penal en su contra, ya que se encuentra acusada y, por lo tanto, sujeta a responder a una acusación o denuncia en su contra, y susceptible de ser convicta. *Pueblo v. Miró González,* supra, pág. 820; *Pueblo v. Carmen Centrale Inc.*, supra, pág. 498. Además, uno de los eventos **que marca el fin del proceso criminal contra la persona acusada de un delito es la emisión del fallo o la sentencia**. *Pueblo v. Pérez Pou*, supra, pág. 229. Según discutido, el fallo es el pronunciamiento hecho por el tribunal

---

[16] *Íd.*, Anejo I, pág. 5.
[17] *Íd.,* págs. 49-53.

condenando o absolviendo a la persona acusada de delito. Regla 160 de Procedimiento Criminal, *supra*, R. 160. En cambio, la sentencia es el pronunciamiento hecho por el tribunal en cuanto a la pena que se le impone a la persona acusada. *Íd.,* R. 162.

En este caso, el señor González Ríos fue condenado con una *Sentencia Mixta* por la comisión de dos (2) delitos de actos lascivos.[18] Específicamente, como resultado de la violación al Artículo 133, inciso (b), fue condenado a cumplir una sentencia de diez (10) años de prisión. Además, por la violación del Artículo 133, inciso (f), fue sentenciado a cumplir una segunda pena de quince (15) años de prisión, la cual debe ser cumplida de forma consecutiva con la primera. Ahora bien, el foro primario dispuso que, dos (2) meses antes de cumplir la primera condena, el recurrente deberá comparecer al foro primario para referir su caso ante un Técnico Sociopenal del Programa de la Comunidad, con el fin de evaluar su idoneidad para cumplir la segunda sentencia bajo libertad a prueba.

Por consiguiente, realmente **no existe un proceso penal iniciado, o pendiente, en contra del señor González Ríos**. En efecto, el 20 de marzo de 2017, se dictó una sentencia en su contra. Esto significa que el tribunal emitió su decisión respecto a la pena que el recurrente debe cumplir. Regla 162 de Procedimiento Criminal, *supra*, R. 162. Destacamos que, la *Sentencia Mixta* es clara: el señor González debe cumplir una pena total de veinticinco años (25) de reclusión por cargos de actos lascivos, con la posibilidad de cumplir su segunda pena bajo el beneficio de libertad a prueba.[19] Por lo tanto, el proceso criminal en su contra culminó. Únicamente queda pendiente la ejecución de su sentencia.

En ese sentido, el tribunal sentenciador, ejerciendo su facultad de suspender total o parcialmente los efectos de la

---

[18] *Íd.,* págs. 1-2.
[19] *Íd.*

sentencia de conformidad con la Ley de Sentencia Suspendida, *supra*, ordenó la celebración de una vista dos (2) meses antes de que el recurrente cumpla la primera condena. Es menester destacar que, esta vista no es equivale o significa la existencia de un proceso penal iniciado o pendiente en contra del señor González Ríos. Esta vista tiene como fin evaluar si el recurrente puede cumplir su segunda pena mediante una alternativa a la prisión. *Pueblo v. Molina Virola*, supra, pág. 717. Así pues, de los autos no surge que el señor González Ríos cuenta con nuevas acusaciones.

Por último, el DCR argumenta que denegar el beneficio es necesario para garantizar que el recurrente comparezca ante el tribunal en el futuro, con respecto a la segunda pena impuesta.[20] Sin embargo, este argumento no nos persuade. El DCR tiene la capacidad de asegurar que el recurrente comparezca ante el tribunal para cumplir con la vista relacionada con la segunda pena impuesta, incluso si concede el privilegio de pase extendido. Esto se debe a que, aun si el DCR le concediese el pase extendido al recurrente, el DCR podría requerir que el señor González Ríos sea sometido a monitoreo y supervisión mediante dispositivos de monitoreo electrónico. Reglamento Núm. 9488, *supra*, pág. 24. Además, como parte del Programa de Pase Extendido por Condiciones de Salud, se llevaría a cabo un seguimiento del cuidado proporcionado a estos pacientes mediante visitas domiciliarias. Ley Núm. 25 de 1992, supra, Art. 7, sec. 1607.

En conclusión, denegar el privilegio de pase extendido bajo el fundamento de que el recurrente tiene un proceso criminal iniciado en su contra ante el TPI, por el hecho de que debe comparecer a una vista ante el foro sentenciador dos (2) meses antes de cumplir la primera pena que le fue impuesta, para la evaluación de su caso

---

[20] *Escrito en cumplimiento de resolución* del DCR, pág. 7.

para el beneficio de libertad a prueba, constituye una determinación irrazonable.

**Ahora bien, debemos destacar que nada de lo anterior debe interpretarse como que estamos adjudicando que el recurrente debe ser admitido en el Programa**. Nuestra determinación únicamente se limita a pasar juicio sobre la validez jurídica de la razón brindada por el DCR para determinar la inelegibilidad del recurrente. Devuelto el asunto al DCR, le corresponderá evaluar nuevamente el caso del señor González Ríos utilizando los criterios dispuestos en la Ley 25 y la reglamentación antes discutida, a fin de cerciorarse que éste cumple con todos los requisitos aplicables al Programa, tomando en cuenta el insumo de las víctimas de los delitos así como cualquier otra información relevante a los fines de evaluar si el recurrente no representa un riesgo para su propia seguridad, la comunidad y las víctimas o partes perjudicadas.

## -IV-

Por los fundamentos que anteceden, revocamos la determinación administrativa impugnada y se ordena la devolución del asunto al DCR para que lleve a cabo los trámites correspondientes conducentes a determinar, si, superado el fundamento legal por el cual se le denegó al recurrente el privilegio solicitado, este cualificaría para ser beneficiario del Programa, luego de considerar los criterios aplicables, conforme dispuesto en la sección que antecede.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones